[870 NE2d 128, 838 NYS2d 810]

STATE OF NEW YORK ex rel. STEPHEN J. HARKAVY, on Behalf of JOHN DOE NOS. 13 THROUGH 22, Appellant, v EILEEN CONSILVIO, as Executive Director of Manhattan Psychiatric Center and Kirby Forensic Psychiatric Center, Respondent.

Argued April 26, 2007; decided June 5, 2007

**POINTS OF COUNSEL**

*Mental Hygiene Legal Service, First Judicial Department,* New York City (*Diane Goldstein Temkin, Marvin Bernstein, Stephen J. Harkavy* and *Karen Gomes Andreasian* of counsel), for appellant. I. Petitioners' substantive due process rights were violated when they were committed directly to a secure psychiatric hospital absent any criteria for secure psychiatric commitment. (*Mark G. v Sabol,* 93 NY2d 710; *Jackson v Indiana,* 406

US 715; *Matter of Kesselbrenner v Anonymous,* 33 NY2d 161; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Goetz v Crosson,* 967 F2d 29; *Matter of David B.,* 97 NY2d 267; *People v Betances,* 176 Misc 2d 66; *Ramos v Town of Vernon,* 353 F3d 171; *Francis S. v Stone,* 221 F3d 100; *Baxstrom v Herold,* 383 US 107.) II. Petitioners were committed as sexually violent predators without satisfying due process minima required under *Kansas v Crane* (534 US 407 [2002]). (*Kansas v Hendricks,* 521 US 346; *Doe v Pataki,* 120 F3d 1263, 522 US 1122; *People v David W.,* 95 NY2d 130.) III. Petitioners' commitments were not supported by professional medical judgment. (*Rodriguez v City of New York,* 72 F3d 1051; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Mathews v Eldridge,* 424 US 319; *Olivier v Robert L. Yeager Mental Health Ctr.,* 398 F3d 183.) IV. Petitioners have no adequate remedy at law by which to challenge their direct-to-Kirby Forensic Psychiatric Center commitments. (*Mathews v Eldridge,* 424 US 319; *Wisconsin v Constantineau,* 400 US 433; *People v David W.,* 95 NY2d 130; *Matter of Consilvio v Michael B.,* 307 AD2d 852, 1 NY3d 545, 2 NY3d 701; *Savastano v Nurnberg,* 77 NY2d 300.) V. Petitioners' direct-to-Kirby Forensic Psychiatric Center commitments violated the Equal Protection Clause. (*Baxstrom v Herold,* 383 US 107; *Francis S. v Stone,* 221 F3d 100; *Humphrey v Cady,* 405 US 504; *Matter of Jamie R. v Consilvio,* 6 NY3d 138.) VI. Absent any existing statutory authority, the Office of Mental Health created an illegal mechanism for the secure commitment of petitioners in violation of the State Administrative Procedure Act and the separation of powers doctrine. (*People v Two Wheel Corp.,* 71 NY2d 693; *Kansas v Crane,* 534 US 407; *People v David W.,* 95 NY2d 130; *Doe v Pataki,* 3 F Supp 2d 456; *People v Cull,* 10 NY2d 123; *Yaretsky v Blum,* 456 F Supp 653; *Whiting v Marine Midland Bank-W.,* 80 Misc 2d 871; *Matter of Jamie R. v Consilvio,* 6 NY3d 138; *Bourquin v Cuomo,* 85 NY2d 781; *Boreali v Axelrod,* 71 NY2d 1.)

*Andrew M. Cuomo, Attorney General,* New York City (*Benjamin N. Gutman, Barbara D. Underwood* and *Daniel Smirlock* of counsel), for respondent. I. The patients' placement at Kirby Forensic Psychiatric Center satisfies substantive due process because it is based on professional judgment. (*Mark G. v Sabol,* 93 NY2d 710; *Zinermon v Burch,* 494 US 113; *County of Sacramento v Lewis,* 523 US 833; *Crosby v State of N.Y., Workers' Compensation Bd.,* 57 NY2d 305; *Washington v Glucksberg,* 521 US 702; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Matter of Jamie R. v Consilvio,* 6 NY3d 138; *Francis S. v Stone,*

221 F3d 100; *Baxstrom v Herold,* 383 US 107; *Buthy v Commissioner of Off. of Mental Health,* 818 F2d 1046.) II. The patients have been afforded equal protection because any differences in treatment are rationally related to legitimate governmental interests. (*People v Parker,* 41 NY2d 21; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Heller v Doe,* 509 US 312; *Cleburne v Cleburne Living Center, Inc.,* 473 US 432; *Matter of Consilvio v Michael B.,* 307 AD2d 852; *Hernandez v Robles,* 7 NY3d 338.) III. The patients' remaining arguments are unpreserved and without merit. (*Kansas v Crane,* 534 US 407; *People v Baumann & Sons Buses, Inc.,* 6 NY3d 404; *Matter of Consilvio v Diana W.,* 269 AD2d 310; *Matter of K.L.,* 1 NY3d 362; *Kansas v Hendricks,* 521 US 346; *Matter of Consilvio v Michael B.,* 1 NY3d 545; *Mathews v Eldridge,* 424 US 319; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Kulak v City of New York,* 88 F3d 63; *Wilkinson v Austin,* 545 US 209.)

## OPINION OF THE COURT

GRAFFEO, J.

This is the second appeal to come before this Court concerning convicted sex offenders who were committed to psychiatric hospitals at the conclusion of their prison sentences. In *State of N.Y. ex rel. Harkavy v Consilvio* (7 NY3d 607 [2006] [*Harkavy I*]) we ruled that the State improperly used the involuntary civil commitment procedures in Mental Hygiene Law article 9 to transfer offenders directly from prison to mental health facilities and we directed that the *Harkavy I* petitioners be afforded hearings in Supreme Court to evaluate the need for continued commitment. Because the petitioners in this case were subjected to the same procedures we found inappropriate in *Harkavy I,* we reverse the order of the Appellate Division and remit this matter to Supreme Court. On remittal, petitioners are entitled to the procedural protections set forth in Mental Hygiene Law article 10—the new statutory scheme recently adopted by the Legislature governing postincarceration civil commitment of sex offenders.

In the fall of 2005, professionals from the Office of Mental Health (OMH) began to evaluate certain felony sex offenders nearing the completion of state prison sentences to assess whether they posed a danger to themselves or others and suffered from mental conditions that warranted commitment in a psychiatric hospital. The *Harkavy I* appeal involved a challenge to the admission of 12 sex offenders who were among the first to be transferred to OMH hospitals. Those petitioners were

placed in the Manhattan Psychiatric Center, a nonsecure OMH facility. This appeal arises from the subsequent commitment, in November and December 2005, of 10 sex offenders to the Kirby Forensic Psychiatric Center, a secure OMH facility, pursuant to the procedures in Mental Hygiene Law article 9. Based on applications signed by prison superintendents and the certifications of two OMH physicians that each petitioner suffered from a mental illness requiring inpatient treatment, the petitioners were transported to Kirby upon the expiration of their sentences where each was examined by a third OMH physician who also determined that admission was necessary.

Petitioner Stephen J. Harkavy, Deputy Director of Mental Hygiene Legal Service, commenced this habeas corpus proceeding in December 2005 on behalf of the 10 Kirby petitioners.[1] Petitioners raised arguments similar to those presented in *Harkavy I*—that their civil commitment pursuant to Mental Hygiene Law article 9 was not statutorily permissible. Because the commitment process was initiated before petitioners completed their prison sentences, they contended that they should have been afforded the procedural protections in Correction Law § 402, which requires that inmates serving prison terms be afforded notice and a precommitment hearing before nonemergency commitment to a mental health facility. In addition, petitioners objected to their confinement in Kirby, a secure facility, raising substantive due process, procedural due process and equal protection claims. Petitioners claimed that there was no statutory or medical basis for direct placement in Kirby and no adequate means for them to challenge their secure placement or obtain transfers to a nonsecure OMH facility.

In response to the petition, OMH asserted that it had concluded, based on its own experience, research findings and consultation with experts in other states, that patients who have a "demonstrated history of violence" against others, including those who have committed sex offenses, should initially be treated in secure facilities. According to OMH, the *Harkavy I* patients had been placed at Manhattan, a nonsecure facility, on a temporary basis because of a lack of space in the State's secure psychiatric facilities. Security was augmented at Manhattan to facilitate the receipt of the *Harkavy I* patients,

---

1. At oral argument, petitioners' counsel advised us that this litigation is now being pursued on behalf of seven petitioners since three of the original petitioners have been released from OMH custody.

who were confined to a segregated ward with additional staff and a specialized security protocol. Nonetheless, OMH determined that nonsecure placement did not present the optimal environment for treatment of such patients. Rather, secure facilities such as Kirby, which have specially trained staff and perimeter security, afforded patients with histories of violence the best environment for rehabilitation, recreation and treatment therapies. OMH indicated that the petitioners in this case, who all have been convicted of sex offenses, were appropriately treated at Kirby because they met the criteria for secure placement and space was available at that facility.

Supreme Court conditionally granted the habeas corpus petition to the extent of ordering an immediate hearing for each petitioner, adhering to its prior holding in *Harkavy I* that petitioners' commitment under Mental Hygiene Law article 9 was improper and that petitioners should instead have been committed using the procedures detailed in Correction Law § 402. The court rejected petitioners' challenge to their treatment in a secure facility, concluding that the direct-to-Kirby placement was not per se erroneous.

The Appellate Division reversed and dismissed the petition, disagreeing with Supreme Court on the threshold issue of the propriety of petitioners' commitment under Mental Hygiene Law article 9. With respect to the placement of petitioners in a secure facility, however, the Appellate Division concurred with Supreme Court's conclusion that petitioners' constitutional arguments lacked merit. Petitioners pursued an appeal to this Court as of right on the constitutional issues asserted.

While this appeal was pending, we decided *Harkavy I*. At issue there was whether petitioners were appropriately committed under Mental Hygiene Law article 9 or should have been afforded the precommitment notice and hearing procedures extended to inmates transferred to OMH hospitals pursuant to Correction Law § 402. We recognized that neither statutory scheme had been specifically designed to address this class of mentally ill patients but concluded, "in the absence of a clear legislative directive in regard to inmates nearing their release from incarceration, . . . that Correction Law § 402 is the appropriate method for evaluating an inmate for postrelease involuntary commitment to a mental facility" (*Harkavy I*, 7 NY3d at 614). We therefore determined, as a matter of statutory interpretation, that inmates transferred directly from a correctional facility to an OMH hospital on a nonemergency basis are

entitled to the procedural steps outlined in Correction Law § 402, even if they are nearing completion of or have just completed their prison sentences. Because the *Harkavy I* petitioners did not have precommitment hearings, we remitted the case to Supreme Court to conduct the necessary hearings.

After the *Harkavy I* decision, the Legislature filled the statutory void, enacting a legislative scheme designed to address the civil confinement of certain classes of inmates completing their terms of imprisonment. The "Sex Offender Management and Treatment Act" (L 2007, ch 7)—which creates a new Mental Hygiene Law article 10—provides that offenders convicted of enumerated crimes, including sex offenses, may be transferred to psychiatric hospitals after their release from prison if certain procedures are followed. Article 10 establishes a multi-step process that may lead to the civil commitment of some offenders and the outpatient supervision and treatment of others.

Under the new statutes, inmates nearing the end of their prison terms who are found, after screening by OMH physicians, to suffer from a mental abnormality creating a predisposition to commit sex offenses and who have difficulty controlling their behavior are referred to the Attorney General for review (Mental Hygiene Law § 10.05). If the Attorney General pursues further action, a "sex offender civil management petition" is filed in supreme or county court (Mental Hygiene Law § 10.06 [a]). The offender is then entitled to a probable cause hearing (Mental Hygiene Law § 10.06 [g]) and, ultimately, a jury trial to determine whether the offender suffers from a "mental abnormality" within the meaning of the statute[2] (Mental Hygiene Law § 10.07). In the event of a verdict finding mental abnormality, the court decides whether the offender is a "dangerous sex offender requiring confinement" or "a sex offender requiring strict and intensive supervision" (Mental Hygiene Law § 10.07 [f]). Dangerous sex offenders must be placed in secure OMH treatment facilities. All other patients suffering from a mental abnormality are released for outpatient treatment by OMH and supervision by the Division of Parole.

Although Mental Hygiene Law article 10 was enacted after these petitioners were transferred to psychiatric hospitals,

---

**2.** " '[A] [m]ental abnormality' means a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]).

the Legislature chose to include them in the population of offenders covered by the new statutory provisions. The term "detained sex offender" is defined in article 10 to encompass

> "[a] person convicted of a sex offense who is, or was at any time after September first, two thousand five, a patient in a hospital operated by [OMH], and who was admitted directly to such facility pursuant to article 9 [of the Mental Hygiene Law] or section four hundred two of the correction law upon release or conditional release from a correctional facility"

(Mental Hygiene Law § 10.03 [g] [5]).

These petitioners—who have each been convicted of a "sex offense" (see Mental Hygiene Law § 10.03 [p]) and were transferred directly from correctional facilities to Kirby in November and December 2005—fall within the purview of the new statutory scheme.

Like the *Harkavy I* patients, the petitioners here were improperly committed under Mental Hygiene Law article 9. As the State concedes, based on our *Harkavy I* precedent, the order of the Appellate Division must be reversed and the matter remitted to Supreme Court to give petitioners appropriate commitment hearings. In light of the new legislation, we conclude that those hearings will be conducted in accordance with article 10; petitioners are entitled to have a jury determine the issue of "mental abnormality" and, if necessary, a court will decide if civil confinement is warranted. Since petitioners have been confined to an OMH facility since late 2005, we trust that the parties will conduct the required proceedings expeditiously, as article 10 directs.[3]

Petitioners' remaining contentions relating to OMH's decision to place them in a secure hospital are also affected by the new statutory requirements. Mental Hygiene Law article 10 provides that patients who are categorized as "dangerous sex offender[s] requiring confinement" must be placed in secure facilities[4] (Mental Hygiene Law § 10.07 [f]; § 10.03 [o]); all other patients must be released for outpatient treatment and supervision (Mental Hygiene Law § 10.07 [f]; § 10.11). Thus, insofar as

---

**3.** We express no view on the propriety of the standards or procedures adopted in the new legislation. Petitioners are free to raise any objections they deem appropriate upon remittal.

**4.** Although petitioners complained that the Legislature had not articulated a standard for secure confinement, such a standard has been included in the new legislation: a

article 10 patients are concerned, the Legislature has determined that confinement in a nonsecure facility is not an available option.

██ Because nonsecure treatment of detained sex offenders is no longer authorized under the relevant statutory provisions, petitioners' challenges to placement in a secure facility and to the adequacy of the procedures for transfer to nonsecure facilities under Mental Hygiene Law article 9 have been rendered academic. The Legislature having expressed its view that confined article 10 patients must be treated in secure settings, any conclusion we might reach about the propriety of petitioners' placement prior to the effective date of the new legislation would have no practical effect on the rights or liabilities of these parties (*see, People v Furlong*, 70 NY2d 756 [1987]; *Matter of Murphy v Ziegler*, 19 NY2d 596 [1967]; *see also, Matter of New York Veteran Police Assn. v New York City Police Dept. Art. I Pension Fund*, 61 NY2d 659 [1983]). Similarly, we have no occasion to address petitioners' separation of powers and State Administrative Procedure Act arguments (to the extent they are preserved for review) because the Legislature has now articulated a state policy relating to the civil commitment of sex offenders and any future proceedings involving these petitioners will be conducted pursuant to that legislative directive.

Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order reversed, etc.

---

" '[d]angerous sex offender requiring confinement' means a person who is a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]).