[887 NYS2d 389]

In the Matter of the STATE OF NEW YORK, Appellant, v JOEY BLAIR, Respondent.

Fourth Department, October 2, 2009

**APPEARANCES OF COUNSEL**

*Andrew M. Cuomo, Attorney General*, Albany (*Zainab A. Chaudhry* of counsel), for appellant.

*Emmett J. Creahan, Director, Mental Hygiene Legal Service*, Buffalo (*Margot S. Bennett* of counsel), for respondent.

**OPINION OF THE COURT**

PERADOTTO, J.

In this appeal, we are confronted with the issue whether respondent is a detained sex offender within the meaning of Mental Hygiene Law § 10.03 (g) (5). Our resolution of the issue requires consideration of the interplay between articles 9 and 10 of the Mental Hygiene Law and the implications of the decisions of the Court of Appeals in *State of N.Y. ex rel. Harkavy v Consilvio* (7 NY3d 607 [2006] [hereafter, *Harkavy I*]) and *State of N.Y. ex rel. Harkavy v Consilvio* (8 NY3d 645 [2007] [hereafter, *Harkavy II*]). Supreme Court concluded that respondent was not a detained sex offender within the meaning of Mental Hygiene Law § 10.03 (g) (5) because he was not "legally detained." We conclude that reversal is required because respondent is a detained sex offender under a plain reading of the statute.

## Factual Background and Procedural History

In May 1997, respondent was convicted upon a plea of guilty of one count of sexual abuse in the first degree (Penal Law § 130.65 [3]) and was sentenced to a term of imprisonment, to be followed by a period of probation. Respondent thereafter violated the conditions of his probation, whereupon his probation was revoked and he was sentenced to a term of imprisonment of 3½ to 7 years on the sexual abuse conviction.

Shortly before he completed serving his prison term, respondent was examined by two physicians from the Office of Mental Health (OMH) for the purpose of determining whether he was subject to involuntary commitment at an OMH facility pursuant to article 9 of the Mental Hygiene Law. The OMH physicians determined that respondent suffered from pedophilia, a mental illness; that he posed a substantial threat of harm to others; and that involuntary hospitalization was warranted. Thereafter, the prison superintendent completed an application for involuntary admission on medical certification, pursuant to Mental Hygiene Law § 9.27. When his prison term expired, in July 2006, respondent was released and was transferred directly to Central New York Psychiatric Center (CNYPC), where he was involuntarily committed for an initial period of 60 days (*see* Mental Hygiene Law § 9.31 [a]).

In August 2006, OMH notified respondent that it intended to seek court authorization to retain him for an additional six-month period and, on September 5, 2006, CNYPC made an application in Supreme Court for a retention order (*see* Mental Hygiene Law § 9.33 [a]). In response, respondent requested a hearing to determine the need for his continued involuntary hospitalization, and sought discovery and the appointment of a medical expert.

During the pendency of the article 9 proceeding, the Legislature enacted the Sex Offender Management and Treatment Act, codified as article 10 of the Mental Hygiene Law, which became effective on April 13, 2007 (*see* L 2007, ch 7). On June 5, 2007, the Court of Appeals issued its decision in *Harkavy II* (8 NY3d at 651-652), determining that convicted sex offenders who were directly transferred to psychiatric hospitals under article 9 at the conclusion of their sentences were entitled to the procedural protections set forth in the newly-enacted article 10. Approximately two weeks after the decision in *Harkavy II* was issued, an OMH case review team referred respondent for a psychiatric evaluation to determine whether he was a "sex offender

requiring civil management" under Mental Hygiene Law article 10 (Mental Hygiene Law § 10.05 [e]). The OMH psychiatrist concluded that respondent suffered from a mental abnormality as that term is defined in Mental Hygiene Law § 10.03 (i), i.e., pedophilia, and that he was likely to commit another sex offense in the future.

In October 2007, OMH provided the Attorney General with notice that respondent may be a detained sex offender who was nearing anticipated release (see Mental Hygiene Law § 10.05 [b]) and, on January 10, 2008, the Attorney General commenced this article 10 proceeding by filing a sex offender civil management petition (see Mental Hygiene Law § 10.06 [a]). Following a hearing, Supreme Court, Oneida County, determined that there was probable cause that respondent was a sex offender requiring civil management under article 10, and the court set a date for trial. The matter was subsequently transferred to Allegany County, upon respondent's request. While the article 10 proceeding was pending, the article 9 proceeding was discontinued by stipulation of the parties.

Respondent then moved to dismiss the article 10 petition contending, inter alia, that he was not a detained sex offender within the meaning of Mental Hygiene Law § 10.03 (g) (5) because he was not lawfully in the custody of OMH at the commencement of the proceeding. The court granted respondent's motion and ordered respondent's release, based on its conclusion that article 10 applies only to sex offenders who are legally detained. We conclude that the order should be reversed.

## Discussion

The Legislature enacted Mental Hygiene Law article 10, which governs the involuntary commitment of certain sex offenders to psychiatric facilities upon the conclusion of their incarceration (Mental Hygiene Law § 10.01 [b]), in response to the decision of the Court of Appeals in *Harkavy I* (see Governor's Program Bill Mem, Bill Jacket, L 2007, ch 7, at 8). In *Harkavy I* (7 NY3d at 610), the Court of Appeals invalidated the practice of involuntarily transferring convicted sex offenders directly from prison to mental health facilities pursuant to Mental Hygiene Law article 9. The Court wrote that "[i]n the absence of specific statutory authority governing the release of felony offenders from prison to a psychiatric hospital, we hold that the procedures set forth in Correction Law § 402, rather than Mental Hygiene Law article 9, better suit this situation" (*id.*).

In its subsequent decision in *Harkavy II* (8 NY3d at 651), however, the Court of Appeals acknowledged that, in enacting article 10, "the Legislature filled the statutory void, enacting a legislative scheme designed to address the civil confinement of certain classes of inmates completing their terms of imprisonment." The Court held that the petitioners in that case, who were transferred from prison to mental health facilities prior to the enactment of article 10, were nonetheless included within the ambit of the new statutory scheme (*id.* at 651-652). The Court thus remitted the matter to Supreme Court for commitment hearings in accordance with Mental Hygiene Law article 10 (*id.* at 652).

Against this backdrop, we turn to the particular statutory provision at issue on appeal and its application to the facts of this case. Article 10 of the Mental Hygiene Law defines "detained sex offender" in relevant part as

> "a person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, in that the person is . . .

> "A person convicted of a sex offense who is, or was at any time after September [1, 2005], a patient in a hospital operated by [OMH], and who was admitted directly to such facility pursuant to article nine of this title or section [402] of the correction law upon release or conditional release from a correctional facility, provided that the provisions of this article shall not be deemed to shorten or lengthen the time for which such person may be held pursuant to such article or section respectively" (Mental Hygiene Law § 10.03 [g] [5]).

The statute broadly defines an agency with jurisdiction as "that agency which, during the period in question, would be the agency responsible for supervising or releasing such person," including the Department of Correctional Services (DOCS) and OMH (*see* § 10.03 [a]).

■ We conclude that respondent falls squarely within the definition of detained sex offender under a plain reading of Mental Hygiene Law § 10.03 (g) (5). Respondent was convicted of sexual abuse in the first degree, a sex offense, and was admitted directly to CNYPC, an OMH hospital, pursuant to Mental Hygiene Law article 9 upon his release from prison on July 19, 2006. Since being admitted to CNYPC in July 2006, respondent

has remained continuously in the custody of OMH, an agency with jurisdiction under article 10 (*see* § 10.03 [a], [g] [5]). Although article 10 was enacted after respondent's initial commitment to CNYPC, the plain language of Mental Hygiene Law § 10.03 (g) (5) evinces the Legislature's intent "to include [respondent] in the population of offenders covered by the new statutory provisions" (*Harkavy II*, 8 NY3d at 652).

In order to circumvent the clear import of Mental Hygiene Law § 10.03 (g) (5), respondent contends that he falls outside the purview of the statute because he was not "legally detained" by OMH. Specifically, respondent contends that his detention was unlawful because: (1) his initial commitment to CNYPC pursuant to article 9 was improper, and (2) his continued retention violated the procedures set forth in article 9. We reject those contentions.

With respect to respondent's initial commitment to CNYPC in July 2006, his situation is no different from that of the petitioners in *Harkavy II*, who were likewise committed directly to OMH facilities at the conclusion of their prison sentences pursuant to article 9 (*see* 8 NY3d at 648). The Court in *Harkavy II* nonetheless concluded that the petitioners therein were detained sex offenders within the meaning of Mental Hygiene Law § 10.03 (g) (5) (*id.* at 651-652). Indeed, the Court's conclusion in *Harkavy II* is compelled by the plain language of section 10.03 (g) (5), which was clearly intended to include the *Harkavy I* patients—similarly situated to respondent herein—within the class of offenders covered by article 10 (*see* § 10.03 [g] [5]). Significantly, in both *Harkavy I* and *Harkavy II*, the Court determined that the proper remedy for the unlawful commitments of the petitioners pursuant to article 9 was not their immediate release but, rather, the proper remedy was to conduct prompt commitment hearings in accordance with the applicable statutes (*see Harkavy II*, 8 NY3d at 652; *Harkavy I*, 7 NY3d at 614). As the Court explained in *Harkavy I* (7 NY3d at 614):

> "[W]e understand how in an attempt to protect the community from violent sexual predators, the State proceeded under the Mental Hygiene Law. *We do not propose that these petitioners be released, nor do we propose to trump the interests of public safety. Rather, we recognize that a need for continued hospitalization may well exist.* We therefore order that those petitioners remaining in OMH custody be afforded an immediate retention hearing pursu-

ant to article 9 of the Mental Hygiene Law—now controlling—since they are no longer serving a prison sentence" (emphasis added).

In support of his contention that article 10 requires that a patient's detention be "lawful" from its inception, respondent erroneously relies on cases in which an article 10 proceeding was commenced while the respondent was in custody for violating the conditions of an unlawfully imposed period of postrelease supervision (*see e.g. Matter of State of New York v F.E.*, 64 AD3d 497 [2009]; *People ex rel. Joseph II. v Superintendent of Southport Correctional Facility*, 59 AD3d 921 [2009], *lv granted* 13 NY3d 704 [2009]; *Matter of State of New York v Randy M.*, 57 AD3d 1157 [2008], *lv denied* 11 NY3d 921 [2009]). Inasmuch as the detained respondent in those cases was not in the lawful custody of DOCS at the time of his transfer to OMH, the respondent was not in the "care, custody, control, or supervision of an agency with jurisdiction" during the relevant time period (Mental Hygiene Law § 10.03 [g]; *see e.g. F.E.*, 64 AD3d at 498 ["DOCS' administrative imposition of (postrelease supervision) having been outside its jurisdiction and therefore null from its inception . . . , respondent was not in DOCS' lawful custody at the time of his transfer to OMH, and thus could not be lawfully transferred by DOCS to OMH"]). Here, there is no question that respondent was lawfully in the custody of DOCS when he was transferred to CNYPC pursuant to article 9. Respondent remained in the custody of OMH, also an agency with jurisdiction, when OMH provided notice to the Attorney General under the newly-enacted Mental Hygiene Law § 10.05 (b).

■ We reject the further contention of respondent that his continued detention in CNYPC without a hearing or retention order violated the requirements of article 9. To the contrary, we conclude that petitioner complied with the requirements of article 9 and then promptly commenced this article 10 proceeding shortly after the Court of Appeals issued its decision in *Harkavy II*. Prior to the expiration of respondent's initial 60-day period of confinement (*see* Mental Hygiene Law § 9.31 [a]), OMH timely notified respondent of its intent to seek court authorization to retain him for an additional six-month period (*see* Mental Hygiene Law § 9.33) and made an application in Supreme Court for a retention order. Although the record does not contain a retention order issued upon the application of OMH, article 9 nevertheless authorizes a hospital to "retain the patient for such further period . . . during which the applica-

tion may be pending'' (§ 9.33 [a]). Respondent requested a hearing in September 2006, and the matter was progressing toward such a hearing when Mental Hygiene Law article 10 was enacted. Although respondent holds petitioner accountable for the delay in the hearing pursuant to article 9, the record does not support his position. Indeed, the submissions of respondent in support of his motion to dismiss reflect that some, if not all, of the delay can be attributed to respondent's requests for discovery and the appointment of an expert.

While respondent's article 9 proceeding was pending, the Court of Appeals held in *Harkavy II* that the newly-enacted article 10 applied to patients, such as respondent, who were transferred directly from prison to an OMH facility under article 9. Notably, the record reflects that OMH began its evaluation of respondent pursuant to article 10 within 17 days of the issuance of the Court's decision in *Harkavy II*. From June 2007, when *Harkavy II* was decided, until October 2007, the parties continued to exchange discovery in the article 9 proceeding. During that same time period, OMH provided the Attorney General with the required notice under Mental Hygiene Law § 10.05 (b), and a case review team determined that respondent was a sex offender requiring civil management pursuant to section 10.05 (g). The Attorney General filed the instant article 10 petition approximately two months after respondent was notified of the findings of the case review team. After a probable cause hearing, the court ordered respondent's continued detention at CNYPC pending trial and scheduled a jury trial, in accordance with Mental Hygiene Law § 10.06 (k) and § 10.07 (a). The article 10 petition was progressing toward trial when respondent filed his motion to dismiss.

■ Even assuming, arguendo, that the delay in holding a hearing under article 9 was entirely attributable to petitioner and that respondent's detention was thereby prolonged, we conclude that the proper remedy is not dismissal of the petition and respondent's release but, rather, the proper remedy is an expeditious hearing (*see Harkavy II*, 8 NY3d at 652; *Harkavy I*, 7 NY3d at 614; *see also State of N.Y. ex rel. Karur v Carmichael*, 41 AD3d 349, 349-350 [2007] [First Department reversed an order that granted the petition for a writ of habeas corpus and directed the immediate release of the petitioner from a psychiatric facility despite the fact that the petitioner was held without legal authority under article 9]; *People ex rel. Noel B. v Jones*, 230 AD2d 809, 811 [1996], *lv dismissed* 88 NY2d 1065 [1996]

[although petitioner was confined without an order authorizing continued retention as required by article 9, dismissal of the retention application or immediate discharge was not the required remedy for the State's failure to comply with the statute]). While we are mindful of the fact that respondent has been confined in an OMH facility since the expiration of his sentence in July 2006, we cannot agree with respondent that he is entitled to dismissal of the petition and immediate release on the facts of this case.

## Conclusion

Accordingly, we conclude that the order should be reversed, respondent's motion to dismiss denied, the petition reinstated, and the matter remitted to Supreme Court for a trial in accordance with Mental Hygiene Law § 10.07.

MARTOCHE, J.P., SMITH, CARNI and GREEN, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously reversed, on the law, without costs, the motion is denied, the petition is reinstated, and the matter is remitted to Supreme Court, Allegany County, for a trial in accordance with Mental Hygiene Law § 10.07.