[3 NE3d 674, 980 NYS2d 337]

In the Matter of STATE OF NEW YORK, Respondent, v NELSON D., Appellant.

Argued October 15, 2013; decided November 26, 2013

**POINTS OF COUNSEL**

*Marvin Bernstein, Mental Hygiene Legal Service*, New York City (*Diane Goldstein Temkin, Karen Gomes Andreasian, Sadie Zea Ishee* and *Deborah P. Mantell* of counsel), for appellant. I. Involuntary inpatient commitment pursuant to the outpatient strict and intensive supervision and treatment statute, Mental Hygiene Law § 10.11, violates a Mental Hygiene Law article 10 respondent's substantive due process rights. (*Kansas v Hendricks*, 521 US 346; *Foucha v Louisiana*, 504 US 71; *Matter of*

*State of New York v Rashid*, 25 Misc 3d 318, 68 AD3d 615, 16 NY3d 1; *O'Connor v Donaldson*, 422 US 563; *Jackson v Indiana*, 406 US 715; *Matter of Kesselbrenner v Anonymous*, 33 NY2d 161; *Matter of State of New York v Myron P.*, 20 NY3d 206; *State of N.Y. ex rel. Harkavy v Consilvio*, 8 NY3d 645; *Rodriguez v City of New York*, 72 F3d 1051; *Matter of Harry M.*, 96 AD2d 201.) II. By circumventing New York's inpatient commitment procedures, the court deprived Nelson D. of procedural safeguards that would have met due process standards. (*People v David W.*, 95 NY2d 130; *Kansas v Hendricks*, 521 US 346; *Matter of Sidney JJ.*, 30 AD3d 959; *Matter of Harry M.*, 96 AD2d 201; *Matter of Kesselbrenner v Anonymous*, 33 NY2d 161; *Project Release v Prevost*, 722 F2d 960; *Matter of David B.*, 97 NY2d 267; *Matter of State of New York v Johnson*, 94 AD3d 1536; *Mathews v Eldridge*, 424 US 319; *O'Connor v Donaldson*, 422 US 563.)

*Eric T. Schneiderman, Attorney General*, New York City (*Leslie B. Dubeck, Barbara D. Underwood* and *Richard Dearing* of counsel), for respondent. The civil management order comports with due process. (*Matter of State of New York v Myron P.*, 20 NY3d 206; *People v Knox*, 12 NY3d 60; *Kansas v Hendricks*, 521 US 346; *Kansas v Crane*, 534 US 407; *Matter of State of New York v Enrique T.*, 93 AD3d 158; *Matter of David B.*, 97 NY2d 267; *Matter of Kesselbrenner v Anonymous*, 33 NY2d 161; *Mental Hygiene Legal Servs. v Ford*, 92 NY2d 500; *Mills v Rogers*, 457 US 291; *Matter of George L.*, 85 NY2d 295.)

## OPINION OF THE COURT

RIVERA, J.

In this Mental Hygiene Law article 10 proceeding, respondent Nelson D. (Nelson D.) appeals from an Appellate Division order that affirmed an amended Supreme Court order directing his involuntary commitment at the Valley Ridge Center for Intensive Treatment (Valley Ridge) pursuant to his designation as a sex offender requiring strict and intensive supervision and treatment (SIST). We conclude that article 10 does not permit confinement as part of SIST, and therefore we reverse.

I.

The State filed an article 10 petition seeking to subject Nelson D., a convicted sex offender who suffers from mental retardation, to civil management. After a jury concluded that Nelson D. suffers from a mental abnormality as defined by the statute, Supreme Court held a dispositional hearing in accordance

with article 10 to determine whether Nelson D. is a "dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision" (Mental Hygiene Law § 10.07 [f]).

At the hearing, the State and Nelson D. presented testimony of their respective experts discussing his condition and an appropriate dispositional outcome. Both experts stated that Nelson D. did not require confinement at a secure facility and that a SIST regimen was an appropriate outcome. However, the State's expert recommended SIST in a structured setting, such as Valley Ridge, an inpatient facility operated by the Office for People with Developmental Disabilities (OPWDD). Nelson D.'s expert stated that Valley Ridge was too confining for a person with Nelson D.'s mental challenges.

Based on the testimony of the experts, the court concluded that the State failed to meet its statutory burden to establish by clear and convincing evidence that Nelson D. is a dangerous sex offender requiring confinement. Consequently, the court found that Nelson D. required SIST under Mental Hygiene Law § 10.11. The court ordered that he be released to the OPWDD to receive proper treatment corresponding to his cognitive functioning, and directed the parties to negotiate the remainder of the terms of SIST and submit a proposed settlement order.

Negotiations between the State and Nelson D. eventually broke down. Unable to come to a mutually acceptable resolution, the State and Nelson D. submitted their respective proposed orders for SIST to the court. The State argued that Nelson D. requires confinement and a SIST plan that includes placement in the custody of OPWDD. In support of its recommendation, the State submitted recommendations from the Department of Corrections and Community Supervision (DOCCS) and the Office of Mental Health (OMH) for placement at Valley Ridge. The State also submitted the OPWDD recommendation that Nelson D. be placed in a highly structured, all-male treatment program under 24-hour supervision. Nelson D. objected to placement at Valley Ridge as a condition of SIST, arguing it constituted civil commitment, inconsistent with article 10. Nelson D. requested a SIST plan involving community group housing, which he argued would be tailored to his needs and provide appropriate supervision, and thus comport with SIST under article 10.

Supreme Court rejected Nelson D.'s proposal. The court concluded that placement at Valley Ridge did not constitute

confinement because it is not a "secure treatment facility," which is the only recognized facility authorized for confinement under article 10.[1] The court found that a SIST disposition with placement at Valley Ridge was consistent with the recommendations from OPWDD, DOCCS, OMH, and the Division of Parole, and ordered Nelson D.'s placement at Valley Ridge.[2]

The Appellate Division, First Department, affirmed, concluding that the Valley Ridge placement was permissible under section 10.11 of the Mental Hygiene Law, and that such placement did not violate Nelson D.'s substantive due process rights because it was an appropriate SIST regimen as authorized under article 10 (100 AD3d 418 [1st Dept 2012]).

II.

On appeal to this Court, Nelson D. argues that involuntary inpatient commitment pursuant to outpatient SIST violates his substantive due process rights. He also argues that the court's purported circumvention of the State's inpatient commitment procedures deprived him of procedural safeguards that would have otherwise met due process standards. The State counters that the jury verdict for mental abnormality satisfies substantive due process requirements, and that Nelson D.'s procedural due process argument is unpreserved, and, alternatively, lacks merit because he has received ample process under article 10 of the Mental Hygiene Law.

We conclude that article 10 provides for only two dispositional outcomes, confinement or an outpatient SIST regime. Therefore, we agree with Nelson D. that, absent a finding of the type of condition that statutorily subjects him to confinement, his placement at Valley Ridge constitutes involuntary confinement, in violation of the plain language of Mental Hygiene Law article 10. We also agree that involuntary commitment, as part of a SIST plan, deprives Nelson D. of the statutorily prescribed procedures mandated for confinement under article 10. Therefore, the Appellate Division order should be reversed.[3]

Our decision is based on the plain language of article 10 which

---

**1.** The trial court noted only two such facilities in the state: Central New York Psychiatric Center and St. Lawrence Psychiatric Center.

**2.** The order states that Nelson D. was to be placed at Valley Ridge, and "thereafter" reside at any other OPWDD facility that would appropriately address his treatment and clinical needs.

**3.** At the time of this appeal Nelson D. had been transferred out of Valley Ridge to another OPWDD facility. Nevertheless, he continues to be subject to

resolves the issues presented on appeal. Therefore, we have no occasion to address the substantive constitutional arguments raised by Nelson D. By relying on the statutory text, we adhere to the well established rule that a court should not address a constitutional question if the matter can be disposed of on some other basis (*see People v Felix*, 58 NY2d 156, 161 [1983] ["It is hornbook law that a court will not pass upon a constitutional question if the case can be disposed of in any other way"]; McKinney's Cons Laws of NY, Book 1, Statutes § 150 [a], Comment ["Ordinarily a court will not pass on a constitutional question if there is any other way of disposing of the case"]).

III.

A.

Under Mental Hygiene Law article 10, a judge is authorized to order one of two dispositional outcomes after a trial determination that a detained sex offender suffers the type of mental abnormality that subjects him to civil management (*see* Mental Hygiene Law § 10.07 [f]; *Matter of State of New York v Myron P.*, 20 NY3d 206, 212 [2012] ["Article 10 has two dispositional choices—either confinement or strict and intensive supervision and treatment"]; *State of N.Y. ex rel. Harkavy v Consilvio*, 8 NY3d 645, 652 [2007] [*Harkavy II*] ["Mental Hygiene Law article 10 provides that patients who are categorized as 'dangerous sex offender(s) requiring confinement' must be placed in secure facilities . . . ; all other patients must be released for outpatient treatment and supervision" (footnote and citations omitted)]). During this dispositional phase, the State bears a heavy burden to establish "by clear and convincing evidence that the respondent [sex offender] has a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the respondent is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.07 [f]). If the State meets its burden, the judge orders confinement, and the respondent "shall be committed to a secure treatment facility for care, treatment, and control until such time as he or she no longer requires confinement" (*id.*). If the State fails to meet its burden, and the judge determines that the sex offender does not meet the statutory definition of a

Supreme Court's order, and therefore his right to a proper placement in accordance with article 10 remains in jeopardy.

dangerous sex offender requiring confinement, as in the case of Nelson D., then the judge must order a regimen of SIST (*see id.*; *see also Myron P.*, 20 NY3d at 213; *Harkavy II*, 8 NY3d at 651). In such case, "the respondent [sex offender] shall be subject to a regimen of strict and intensive supervision and treatment in accordance with section 10.11 of this article" (Mental Hygiene Law § 10.07 [f]). Thus, according to the plain language of article 10, these are mutually exclusive dispositional outcomes, textually structured as disjunctive options of confinement *or* SIST.

Moreover, these dispositional outcomes are designed to address the treatment needs of the two categories of sex offenders requiring civil management. The statutorily circumscribed dispositions for these two categories of sex offenders do not overlap. As plainly stated in the definitional section of article 10, a sex offender who requires SIST is an offender who is not "a dangerous sex offender requiring confinement" (*id.* § 10.03 [r]).

We have previously recognized that article 10 is limited to these two dispositional outcomes, depending on the dangerous nature of the offender. In *Harkavy II*, we said that while dangerous sex offenders are consigned to confinement within a secure facility in accordance with the statute, "[a]ll other patients suffering from a mental abnormality are released for outpatient treatment by OMH and supervision by the Division of Parole" (*Harkavy II*, 8 NY3d at 651). In *Myron P.*, we again recognized that confinement and SIST are different options, and that the legislature had authorized trial judges to determine "whether the individual's dangerousness necessarily requires retention or the individual could safely be treated and/or supervised on an outpatient basis" (*Myron P.*, 20 NY3d at 213).

The State argues that the court's dispositional options are not limited to confinement versus nonconfinement, but rather to confinement as specifically defined in article 10 within a designated secure treatment facility, versus supervision and treatment in any setting, including some other, less secure facility, where Nelson D.'s freedom, nonetheless, may be restricted. The State argues that civil management inherently requires restraints on liberty, including involuntary placement, be it in a secure facility or other government institution.

We cannot accept the State's qualification of civil management given that the basic and undeniable character of confinement is the inability to leave at will from government custody.

That essential aspect of confinement belies a reading of article 10 that confinement is not "confinement" as long as the offender is committed to a facility other than a "secure facility." Certainly, if the legislature meant to permit confinement as part of SIST, it would not have been so careful and deliberate in distinguishing confinement from SIST throughout article 10 (*see* Mental Hygiene Law §§ 10.03 [e], [q], [r]; 10.07 [f]; 10.11). The State misinterprets the plain language of article 10, and the clear statutory distinction between confinement, with its attendant restraint on liberty and freedom, and SIST, with its outpatient-based restrictive supervision.

The State also ignores the fact that the judicial dispositional outcomes are delimited by the statutory distinction between categories of sex offenders, which provide the foundation for the article 10 civil management structure. Under article 10, commitment is sanctioned when there is a finding that the sex offender suffers from the type of mental abnormality that renders the sex offender dangerous and unable to control his conduct (*see id.* § 10.07 [f]). Absent this determination of a sex offender's mental condition, there cannot be a judicially imposed period of confinement.[4]

The legislative findings in support of article 10 constitutionally permissible civil management recognize that confinement is relegated to "extreme cases" for "the most dangerous [sex] offenders" (*id.* § 10.01 [b]; *see also Kansas v Hendricks*, 521 US 346, 357 [1997] ["States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to

_____

4. The dissent contends that because SIST must, by necessity, require some restraint of liberty, a SIST plan may also validly include confinement to an inpatient facility. This is exactly what the statute does not provide. Article 10 sets forth two dispositional choices, confinement or SIST, and we have said that SIST is "outpatient treatment by OMH and supervision by the Division of Parole" (*Harkavy II*, 8 NY3d at 651; *see also Myron P.*, 20 NY3d at 213 [noting that confinement is the sole dispositional outcome under article 9, but article 10 provides for confinement *or* SIST]). Moreover, to hold that because a court may impose restrictions as part of a SIST regimen, a court is also free to impose confinement, would upend the therapeutic basis of article 10, and allow the State to avoid its statutorily mandated burden to prove by clear and convincing evidence that a sex offender requires confinement because of the offender's mental abnormality. To the extent the dissent invites us to consider what would constitute a lawful SIST plan, we need not opine on the legality of any hypothetical SIST regimen. A SIST plan is dependent on the unique treatment needs of the individual sex offender. We only determine, as a statutory matter, that confinement is not a proper component of SIST under article 10.

the public health and safety"]; *Heller v Doe by Doe*, 509 US 312, 332 [1993] ["the state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable . . . to care for themselves, as well as authority under its police power to protect the community from any dangerous mentally retarded persons" (internal quotation marks and citation omitted)]; *Allen v Illinois*, 478 US 364, 373 [1986] [same]; *Minnesota ex rel. Pearson v Probate Court of Ramsey Cty.*, 309 US 270, 274-275 [1940] ["Whether the legislature could have gone farther is not the question. The class it did select is identified by the state court in terms which clearly show that the persons within that class constitute a dangerous element in the community which the legislature in its discretion could put under appropriate control"]). Article 10 specifically provides for confinement solely for a sex offender with a mental abnormality "involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]). Here, the court found exactly the opposite. The court concluded that Nelson D. did not meet the definition of a dangerous sex offender requiring confinement under article 10, but rather that he "is a sex offender requiring a regimen of [SIST] in accordance with [Mental Hygiene Law] § 10.11."

The State also argues that Nelson D.'s involuntary confinement at Valley Ridge is within the court's statutory authority because article 10 requires the court to order DOCCS to develop, in consultation with the Commissioner of OPWDD, recommended supervision requirements, which may include "specification of residence or type [of] residence" (Mental Hygiene Law § 10.11 [a] [1]). Although the State's argument is anchored in the statutory language, a close reading of Mental Hygiene Law § 10.11 (a) (1) does not support this interpretation. The reference to "residence" in section 10.11 (a) (1) is part of a longer nonexhaustive list of recommended supervision requirements set forth in that section.[5] These requirements are only applicable to those offenders who are under a SIST regimen, and thus, by definition, those who are not confined. Moreover, the

---

5. Other items on the list include electronic monitoring, global positioning satellite tracking, polygraph monitoring, prohibition of contact with identified past or potential victims, strict and intensive supervision by a parole officer, and "any other lawful and necessary conditions that may be imposed by a court" (Mental Hygiene Law § 10.11 [a] [1]).

requirements set forth in section 10.11 (a) (1) are in the nature of nonconfinement conditions. They refer to ways of supervising, tracking and controlling the offender in a SIST program. In this context, the reference to "specification of residence or type [of] residence" is best understood to relate to the types of locations that further the necessary supervision requirements, not the location of the offender's confinement, because, simply stated, confinement cannot be a proper part of a SIST program. Thus, "residence" in this section refers to whether the offender's living arrangements prohibit or permit certain types of conduct, or otherwise provide for certain services.

The State appears to argue that article 10 contemplates a category of sex offender, one that is not found to be dangerous and subject to confinement in a secure facility, but one that has a mental abnormality that requires strict and intensive supervision provided through involuntary confinement in a government institution. The State's argument ignores that the defining characteristic of confinement is restraint of liberty, and that its interpretation of the statute is not supported by the text. Moreover, article 10 neither anticipates nor provides for the type of placement advocated by the State because it only provides for confinement or SIST, and does not merge the two.[6]

B.

Nelson D. also argues that a SIST plan that includes commitment to Valley Ridge denies him the full range of procedural protections contained in the Mental Hygiene Law that are designed to avoid the continuation of confinement beyond its lawful limits. The State responds that this argument is unpreserved and without merit. The record, however, belies the State's claim of lack of preservation because Nelson D. asserted violations of his substantive and procedural rights in the proposed findings he submitted to the Supreme Court.

---

**6.** The dissent argues that our decision will result in confinement of persons who would be better suited to SIST with inpatient restrictions because courts seeking to avoid a decision at odds with our holding will order confinement, "even if they are not 'likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility' " (*see* dissenting op at 245, quoting Mental Hygiene Law §§ 10.03 [e]; 10.07 [f]). However, a court's determination of what should be the proper article 10 civil management outcome is based solely on a court's findings after a dispositional hearing (*id.* § 10.07 [f]). Where the court determines there is no clear and convincing evidence that the respondent requires confinement, a court cannot order this disposition.

On the merits, given the procedural framework of article 10, it is undeniable that if Nelson D. is confined as part of a SIST plan and denied procedures available to designated sex offenders confined to a secure facility, such denial would be a violation of statutory requirements intended to protect against unlawful confinement (*see* Mental Hygiene Law §§ 10.09, 10.11). Under article 10, a confined dangerous sex offender is entitled to annual review of his placement (*id.* § 10.09 [b]), the right to an independent psychiatric examiner at state cost, and a hearing, where the burden is on the State to establish the lawfulness of the continued confinement (*id.* § 10.09 [d]). Moreover, a confined sex offender "may at any time petition the court for discharge and/or release to the community" as part of a SIST plan (*id.* § 10.09 [f]).

In comparison, while in SIST, the sex offender may seek modification or termination of SIST and its conditions, but only once every two years (*id.* § 10.11 [f]). As a result, the offender must wait at least two years before filing his or her first petition. While the State continues to bear the burden of showing, by clear and convincing evidence, that the offender continues to be a sex offender requiring civil management (*id.* § 10.11 [h]), when a sex offender files a modification petition, "[a sex offender] seeking modification shall have the burden of showing that those modifications are warranted, and the court shall order such modifications to the extent that it finds that the party has met that burden" (*id.* § 10.11 [g]).

There is a demonstrably meaningful difference in the infringement of liberty where confinement in a secure facility permits the sex offender to seek reconsideration at any time, but an offender subject to SIST, who is involuntarily committed, must wait two years before consideration of the specifics of the SIST order, all the while confined against his will in a government institution.

The Appellate Division order should be reversed, without costs, and case remitted to Supreme Court for further proceedings in accordance with this opinion.

PIGOTT, J. (dissenting). I disagree with the majority's view that confinement in an inpatient facility (of which Valley Ridge Center for Intensive Treatment is one) can never be part of a "regimen of strict and intensive supervision and treatment" (SIST) (Mental Hygiene Law § 10.11). Moreover, I believe that the majority's decision will have the effect that more, rather

than fewer, article 10 sex offenders will be judged to be "dangerous sex offender[s] requiring confinement" in a designated secure treatment facility (Mental Hygiene Law § 10.07 [f]), even when they might be successfully supervised and treated in the community under SIST. Therefore, I dissent.

Under Mental Hygiene Law § 10.11 (a) (1), a court ordering the release of an individual to a regimen of SIST shall order the Department of Corrections and Community Supervision (DOCCS) to recommend supervision requirements, to "be developed in consultation with" the Office of Mental Health or the Office for People With Developmental Disabilities, that "may include . . . any . . . lawful and necessary conditions that may be imposed by a court." Moreover, Mental Hygiene Law § 10.11 (a) (1) provides a nonexhaustive list of such requirements, which includes "specification of residence or type [of] residence." It is clear that the legislature intended to give courts wide latitude in setting conditions of SIST, including specification of the type of residence—or even what particular residence—a sex offender must live in.

The majority holds that involuntary confinement in a government institution cannot be a condition of SIST because such confinement is a "restraint of liberty" (majority op at 242) and, in the majority's view, Mental Hygiene Law article 10 only restrains a sex offender's liberty when he or she is determined to be a "dangerous sex offender requiring confinement." But most, if not all, of the items in the nonexhaustive list of possible SIST conditions restrain a sex offender's liberty to some degree. A sex offender is not unrestrained if he is being tracked via GPS, electronically monitored every time he accesses a computer, and intensively supervised on a daily basis by his parole officer.

Moreover, the majority does not make clear whether it would be acceptable for a court to, say, place a sex offender, against his will, in a state-owned halfway house with a strictly enforced nighttime curfew. Does that count as being involuntarily confined in a government institution, so that it cannot be ordered as a SIST condition under the majority's holding? After all, the sex offender in this scenario is subject to involuntary confinement at night. Alternatively, is this an acceptable SIST requirement because the sex offender is free to leave the halfway house during daylight hours?

Because the majority does not answer these questions, the short-term effect of the Court's holding may be that more article

10 sex offenders will be relegated to confinement in the designated secure treatment facilities, even if they are not "likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]; *see* § 10.07 [f]). Courts will fear that placing article 10 sex offenders in a halfway house or group home, with a curfew and a considerable degree of supervision by employees of the residence (as well as by DOCCS), would be in violation of the Court's holding here.

Under the majority's ruling, Nelson D. himself must be released from the Broome Developmental Center in Binghamton, where he currently resides (unless the State seeks to keep him there under Mental Hygiene Law article 15 because he suffers from intellectual disability). But many sex offenders who might otherwise be safely housed in community dwellings may instead find themselves confined in the designated secure treatment facilities. It does not make sense to think that the legislature intended this result.

Chief Judge LIPPMAN and Judges GRAFFEO and ABDUS-SALAAM concur with Judge RIVERA; Judge PIGOTT dissents in an opinion in which Judges READ and SMITH concur.

Order reversed, without costs, and case remitted to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein.