Matter of Robert C. B. (2022 NY Slip Op 04301)

Matter of Robert C. B.

2022 NY Slip Op 04301

Decided on July 6, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 6, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
COLLEEN D. DUFFY
JOSEPH J. MALTESE
LARA J. GENOVESI, JJ.

2020-04671

[*1]In the Matter of Robert C. B. (Anonymous), appellant. Michael Callahan, respondent. (File No. 97851/09)

Disability Rights New York, Albany, NY (William J. Tronsor and Jennifer H. Feeley of counsel), for appellant.
Fitzgerald & Sadove PLLC, White Plains, NY (Erica M. Fitzgerald and Stacy M. Sadove of counsel), for respondent.

DECISION & ORDER
In a guardianship proceeding pursuant to Surrogate's Court Procedure Act article 17-A in which Robert C. B. petitioned to dissolve the guardianship of his person and property, Robert C. B. appeals from an order of the Surrogate's Court, Dutchess County (Michael G. Hayes, S.), dated May 15, 2020. The order, insofar as appealed from, after a hearing, denied that branch of the petition which was to dissolve the guardianship of Robert C. B.'s property.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the petition which was to dissolve the guardianship of Robert C. B.'s property is granted.
Robert C. B. (hereinafter the petitioner) was born in 1996, and his parents died when he was a child. In her will, the petitioner's mother named her brother, Michael Callahan, as the petitioner's guardian, and in 2015, the Surrogate's Court found that the petitioner, who was then 18 years old, was a developmentally disabled person under SCPA article 17-A and appointed Callahan, his uncle, as the guardian of his person and property. In 2019, the petitioner filed a petition to dissolve the guardianship. Callahan agreed not to take a position as to whether the petition should be granted. The petitioner withdrew his allegations contesting the original guardianship determination, as well as any claims that Callahan had not acted in his best interest. Following a hearing, the court granted that branch of the petition which was to dissolve the guardianship of the petitioner's person and denied that branch of the petition as was to dissolve the guardianship of the petitioner's property. The petitioner appeals.
SCPA article 17-A authorizes a court to appoint an individual with a developmental disability "a guardian of the person or of the property or of both if such appointment of a guardian or guardians is in the best interest of the person who is developmentally disabled" (SCPA 1750-a[1]). A person is developmentally disabled under SCPA article 17-A if he or she (1) has "an impaired ability to understand and appreciate the nature and consequences of decisions which result in such person being incapable of managing himself or herself and/or his or her affairs by reason of developmental disability," (2) "such condition is permanent in nature or likely to continue indefinitely," (3) the disability is attributable to, among other conditions, autism, and (4) the disability "originates before such person attains age twenty-two" (id. § 1750-a[1]).
A guardianship under SCPA article 17-A "shall not terminate at the age of majority" of the "person who is developmentally disabled but shall continue during the life of such person, or until terminated by the court" (id. § 1759[1]). "[A]n [SCPA] article 17-A guardianship is the most restrictive type of guardianship available under New York law and should only be granted in the absence of less restrictive alternatives" (Matter of Eli T., 62 Misc 3d 638, 640 [Sur Ct, Kings County]). Further, "proof that a person with an intellectual disability needs a guardian must exclude the possibility of that person's ability to live safely in the community supported by family, friends and mental health professionals" (Matter of Dameris L., 38 Misc 3d 570, 578 [Sur Ct, NY County]).
A person with a developmental disability who is 18 years old or older and for whom a guardian has been appointed under SCPA article 17-A may petition, inter alia, "to have the guardianship order modified, dissolved or otherwise amended" (id. § 1759[2]). "Upon such a petition for review, the court shall conduct a hearing pursuant to [SCPA 1754]" (id.). If, after the hearing, "the court is satisfied that the best interests of the . . . person who is developmentally disabled will be promoted by the appointment of a guardian of the person or property, or both, it shall make a decree naming such person or persons to serve as such guardians" (id. § 1754[5]). "The term 'best interest' has been aptly described as amorphous and . . . [u]nderstanding the functional capacity of an individual with disability, what an individual can or cannot do, is a necessary inquiry in determining best interest and the necessity of guardianship (Matter of Hytham M.G., 52 Misc 3d 1211[A], 2016 NY Slip Op 51113[U], *3 [Sur Ct, Kings County] [citations and internal quotation marks omitted]; see Matter of Chaim A.K., 26 Misc 3d 837, 845 [Sur Ct, NY County]).
Here, the petitioner correctly contends that the Surrogate's Court erred in denying that branch of the petition which was to dissolve the guardianship of his property. The petitioner established that he did not have a disability as defined in SCPA article 17-A, as his evidence showed that his ability to "understand and appreciate the nature and consequences of decisions" was not impaired (id. § 1750-a[1]). The petitioner presented medical evidence that his autism was mild and that he did not have significant deficits in adaptive functioning. He also showed, through his own testimony, that he understood the consequences of decisions in financial and other areas. The court relied heavily on a car purchase that the petitioner made under predatory financial terms in finding that the petitioner lacked an understanding of consequences and that he lacked insight into his limited understanding of consequences. In doing so, the court ignored both the context in which the petitioner made the decision to purchase the car and the steps that he took after this purchase in order to ensure that he kept current with his car and insurance payments. The petitioner bought the car so that he would have a reliable way to travel to and from work. He researched car dealerships and insurance companies to determine where a new driver without a credit history could purchase a car and insurance. After purchasing the car, he realized that he had made "a bad business decision," and he took steps to mitigate that decision, including seeking the advice of the attorney who had represented him throughout his childhood, cutting out unnecessary expenses, and picking up extra shifts at work during a time of the year when he would normally be working fewer hours. He understood that failing to keep up with his car payments would result in the car being repossessed and a long-term negative mark on his credit report, and when he testified several months after the car purchase, he remained up to date on all of his bills. Rather than showing that the petitioner lacked an understanding of consequences, this evidence showed that he evaluated his circumstances, researched the options available to him under those circumstances, learned through experience that he had made a poor financial decision, and took steps to minimize the negative consequences arising from that decision.
The Surrogate's Court also found that the petitioner's understanding of his finances was "rudimentary" and that he could not manage his finances without help. These findings were belied by the petitioner's testimony. The petitioner understood, for example, how his rent was calculated, the importance of staying up to date with his bills, what expenses were nonessential and could be eliminated when he needed to conserve money, how to open a bank account, how to obtain advice from the bank on improving his financial situation, and that he would not have direct access to his trust funds if the guardianship were dissolved and that those funds were placed into a pooled trust. As to managing his finances, at the time of his testimony, his bills were all up to date. Moreover, although Callahan had previously used the petitioner's trust to pay some of the petitioner's expenses, at the time of his testimony, neither Callahan nor the trust were paying any of [*2]the petitioner's bills. Thus, the petitioner demonstrated that he understood and was able to manage his own finances despite having made a poor decision in purchasing a car with an inflated purchase price and exorbitantly high interest rate.
Accordingly, the petitioner established that he was not developmentally disabled as defined under SCPA article 17-A, and the Surrogate's Court therefore should have granted that branch of the petition which was to dissolve the guardianship of the petitioner's property.
In light of the foregoing, we need not reach the petitioner's contention that the Surrogate's Court erred in finding that a property guardian was necessary because he did not have a supported decision-making network in place. Furthermore, because we have determined this appeal under the plain language of SCPA article 17-A, we have no occasion to reach the petitioner's constitutional argument regarding equal protection of the laws (see Matter of State of New York v Nelson D., 22 NY3d 233, 237-238; People v Felix, 58 NY2d 156, 161).
DILLON, J.P., DUFFY, MALTESE and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court