OPINION OF THE COURT
 

 Chief Judge Wachtler.
 

 In
 
 Hymowitz v Lilly & Co.
 
 (73 NY2d 487, 507), this Court, recognizing that "extant common-law doctrines, unmodified, provide no relief for the DES plaintiff unable to identify the manufacturer of the drug that injured her,” adopted a market share theory to create a "realistic avenue of relief for plaintiffs injured by DES.” Since our decision in that case three years ago, Supreme Court, Erie County, has issued an order severing the market share issue from every DES case pending in New York and consolidating these actions so that the market share issue can be resolved in a single proceeding. The question now before us is whether the DES plaintiffs are entitled to a jury trial on the issue of market share. We agree with the Appellate ¡.Division that plaintiffs have a constitutional right to a jury in the market share trial and consequently affirm.
 

 As we noted in
 
 Bichler v Lilly & Co.
 
 (55 NY2d 571, 576) and
 
 *302
 
 in
 
 Hymowitz,
 
 diethylstilbestrol or DES is a synthetic substance that duplicates the activity of estrogen, a naturally formed female hormone. DES was invented by British researchers in 1937, but it was never patented. It was therefore available for production by any pharmaceutical company that obtained the requisite Food and Drug Administration (FDA) approval.
 

 In 1941, the FDA approved the new drug applications (NDAs) of 12 drug manufacturers to market DES for a variety of ailments not related to pregnancy. In 1947, the FDA began to approve the NDAs of drug manufacturers who sought to market DES for the prevention of human miscarriages. By 1951, the FDA had concluded that the drug was generally safe for use during pregnancy and ceased to require that an NDA be submitted by a drug manufacturer when it wanted to market DES for that purpose. In 1971, however, the FDA banned the use of the drug for the treatment of problems of pregnancy after studies indicated that DES caused vaginal adenocarcinoma, a rare disease involving cancerous growth in glandular tissue, and adenosis, a precancerous vaginal or cervical growth, in the daughters of women who took DES during pregnancy. In New York State alone it has been estimated that more than 100,000 women were injured by exposure to DES in útero
 
 (Bichler v Lilly & Co., supra,
 
 at 577).
 

 In
 
 Hymowitz,
 
 we detailed the formidable obstacles that make traditional legal recovery a virtual impossibility for many DES plaintiffs. Foremost among these is the plaintiffs’ difficulty in identifying the manufacturer of the DES ingested in a particular case. Because all DES produced had the identical chemical composition, druggists often filled prescriptions with whatever drug was available. Approximately 300 companies produced the drug for pregnancy use, but during the relevant time period, drug companies both entered and left the market. These problems were only exacerbated by the long latency period for DES injuries. As we stated in
 
 Hymowitz,
 
 "the pregnant women who took DES generally never knew who produced the drug they took, and there was no reason to attempt to discover this fact until many years after ingestion, at which time the information is not available”
 
 (id.,
 
 at 503).
 

 In our effort to address this critical problem of proof unique to DES cases, we examined the common-law doctrines of alternative liability and concerted action and concluded that these doctrines, unaltered, would not afford relief to DES
 
 *303
 
 plaintiffs
 
 (id.,
 
 at 505). Next, we looked for guidance to other State courts that had already considered the identification dilemma faced by DES plaintiffs
 
 (id.,
 
 at 509-511). Based on our survey of the various approaches taken by other State courts and our appreciation for the realities of mass tort litigation in this State, we concluded that a market share theory, based on a national market, was the best solution to the identification problem unique to DES cases
 
 (id.,
 
 at 511). Under that theory, each defendant who marketed DES for pregnancy use was to be held liable according to that manufacturer’s market share.
 

 In choosing to adopt a national market share theory as a matter of New York law, we stated that "[u]se of a national market is a fair method * * * of apportioning defendants’ liabilities according to their total culpability in marketing DES for use during pregnancy. Under the circumstances, this is an equitable way to provide plaintiffs with the relief they deserve, while also rationally distributing the responsibility for plaintiffs’ injuries among defendants”
 
 (id.,
 
 at 512). Only those defendants who did not participate in the marketing of DES for pregnancy use would not be held liable for a particular plaintiff’s injury. "[B]ecause liability * * * is based on the over-all risk produced, and not causation in a single case, there should be no exculpation of a defendant who, although a member of the market producing DES for pregnancy use, appears not to have caused a particular plaintiff’s injury”
 
 (id.,
 
 at 512).
 

 After
 
 Hymowitz,
 
 the market share issue remained to be litigated. By order filed April 4, 1990, the DES market share issue in the cases pending in the New York courts was severed, consolidated for the purpose of discovery and trial, and venued in Erie County. The trial court entered a case management order in August of 1990 in which it provided that certain motions could be filed within 45 days of entry, including a motion addressing whether any of the parties had a right to a jury trial. By notice of motion dated August 31, 1990, plaintiffs’ liaison counsel requested an order granting a jury trial of the market share issue.
 

 In a decision dated March 8, 1991, this motion was denied. Calling the market share theory a newly created remedy unknown at common law, the trial court concluded that the plaintiffs had neither a constitutional nor a statutory right to a jury trial. Further, the trial court held that the market share trial was not itself a cause of action, but was more in
 
 *304
 
 the nature of a pretrial proceeding. Because causation and damages would be tried to a jury in the main action, the court determined that there was no right to a jury trial of the severed market share issue.
 

 The Appellate Division reversed, with two Justices dissenting. The majority held that
 
 Hymowitz
 
 had not created a new equitable remedy, as the defendants urged; instead, it brought about the modification of a preexisting legal cause of action (171 AD2d 352, 354). Because the essential nature of each DES case was a cause of action at law to recover money damages for personal injury, the plaintiffs were entitled to a jury trial under article I, § 2 of the New York Constitution. The dissenters by contrast termed the market share issue preliminary and collateral and reasoned that no right to a jury trial attached.
 

 Article I, §2 of the New York Constitution provides that "[tjrial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever.” The express language of this provision exhorts us to consider as an historical matter the types of actions to which the right to a jury trial has traditionally attached
 
 (see, Motor Vehicle Mfrs. Assn. v State of New York,
 
 75 NY2d 175, 180). The first Constitution, that of 1777, guaranteed a right to trial by jury in all cases in which it had "heretofore been used” (NY Const of 1777, art XLI). The effect of this language was to constitutionalize the right to a jury trial as it existed in the common law at that time
 
 (see, Motor Vehicle Mfrs. Assn. v State of New York, supra,
 
 at 181;
 
 Matter of Luria,
 
 63 Misc 2d 675, 677;
 
 see also,
 
 Siegel, NY Prac § 377). The Constitutions of 1821, 1846 and 1894 contained similar language guaranteeing the right to a jury trial in all cases as it had "heretofore been used”; the result of the continuation of this broad "heretofore” language was to accord constitutional significance to those cases in which the right to a jury trial had been guaranteed by statute between 1777 and 1894
 
 (see, Matter of Luria, supra,
 
 at 677). The 1938 Constitution narrowed the "heretofore” clause to grant the right to a jury trial only as it was "heretofore * .* * guaranteed
 
 by constitutional
 
 provision” (emphasis added). This change in language thus guarantees a jury trial (1) in all those cases to which it would have traditionally been afforded under the common law before 1777, and (2) in all cases to which the Legislature by statute extended a right to a jury trial between 1777 and 1894
 
 (Motor Vehicle Mfrs. Assn. v State of New York, supra,
 
 at 181; 4 Weinstein-Korn
 
 *305
 
 Miller, NY Civ Prac 4101.08). In addition, it has been held that the right to a jury trial is not strictly limited to those instances in which it was actually used in 1894, but also extends to new cases that are analogous to those traditionally tried by a jury
 
 (Colon v Lisk,
 
 153 NY 188, 193;
 
 Independent Church of Realization of Word of God v Board of Assessors,
 
 72 AD2d 554).
 

 This right to a jury trial is additionally codified in CPLR 4101. CPLR 4101 (1) provides that "issues of fact
 
 * * *
 
 [in] an action in which a party demands and sets forth facts which would permit a judgment for a sum of money only” are triable to a jury. This subdivision, which has its origins in a pre-1894 statute (Code Civ Pro § 968 [L 1876, ch 448, § 968]), encompasses the largest group of actions triable to a jury at common law before 1777 and has been held to include actions in tort and contract (4 Weinstein-Korn-Miller, NY Civ Prac fl 4101.11).
 

 In the case now before us, the DES plaintiffs have the right to a jury trial on the merits of their personal injury claims because these causes of action are for money damages and would have been tried by a jury at common law. The question that remains is whether the severance and consolidation of the market share inquiry in one court converts an examination of the defendants’ relative culpability into a wholly separate equitable proceeding to which no right to a jury trial attaches.
 

 The defendants argue that in adopting a market share theory in
 
 Hymowitz,
 
 this Court created a new equitable remedy, unknown in the common law, that absolved DES plaintiffs from identifying the particular product that caused their injury and that apportioned liability in accordance with overall culpability. In support of their argument, the defendants point to our use of the word "equitable” to describe our decision to use a market share theory in DES cases
 
 (Hymowitz v Lilly & Co.,
 
 at 508 ["(w)e turn then to the question of how to fairly and
 
 equitably
 
 apportion the loss occasioned by DES” (emphasis added)], at 512 ["this is an
 
 equitable
 
 way to provide plaintiffs with the relief they deserve, while also rationally distributing the responsibility for plaintiffs’ injuries among defendants” (emphasis added)]). They argue that this use of the word "equitable” signalled that litigation of the market share issue was akin to a traditional action in equity, and that consequently no right to a jury trial attached as a constitutional matter.
 

 
 *306
 
 When we used the word "equitable” in
 
 Hymowitz,
 
 we were not categorizing the market share theory; rather, we were indicating the extent to which our decision was compelled by simple fairness. We adopted a market share theory because, as we noted at the time, "the ever-evolving dictates of justice and fairness, which are the heart of our common-law system, requireld] formation of a remedy for injuries caused by DES”
 
 (id.,
 
 at 507).
 

 Our decision to adopt a market share theory in DES cases can be compared to our recognition of strict products liability in
 
 Codling v Paglia
 
 (32 NY2d 330). Both were responses to gaps in traditional tort doctrines that left unprotected an entire class of plaintiffs whose real and substantial injuries were the product of the ever-increasing complexity of modern society. In
 
 Codling v Paglia,
 
 we stated that "[t]he dynamic growth of the law in this area has been a testimonial to the adaptability of our judicial system and its resilient capacity to respond to new developments, both of economics and of manufacturing and marketing techniques”
 
 (id.,
 
 at 339).
 
 Codling v Paglia
 
 and
 
 Hymowitz
 
 both represent efforts to "achieve the ends of justice in a more modern context”
 
 (see, People v Hobson,
 
 39 NY2d 479, 489), but a concern for justice does not necessarily signal the creation of an equitable remedy.
 

 Hymowitz
 
 simply relaxed the DES plaintiffs’ burden of proof on that portion of the causation requirement which would have obligated the plaintiffs to establish the identity of the manufacturer of the drug their mothers ingested. It did not create a new equitable cause of action, as defendants contend. At common law, a plaintiff is required to introduce evidence that provides a reasonable basis for concluding that the defendant’s conduct was a cause in fact of the plaintiff’s injury
 
 (see,
 
 Prosser and Keeton, Torts § 41, at 269-272 [5th ed]). Before
 
 Hymowitz,
 
 identification of the manufacturer responsible for a given injury would have been part of the plaintiff’s over-all burden on the issue of causation. As noted above, the virtual impossibility of identifying the manufacturer of the drug taken by a particular DES mother has made this burden insurmountable for many plaintiffs. In
 
 Hymowitz
 
 we acknowledged the inadequacy of existing common-law doctrines and modified traditional causation-in-fact requirements to address the problems of proof confronted by DES plaintiffs.
 

 The market share inquiry takes the place of the requirement that the plaintiffs identify the manufacturer of the drug
 
 *307
 
 ingested by their mothers. To claim that identity is no longer an issue in these cases is overly simplistic, however. True, the focus of the inquiry into identification has shifted as a result, of the
 
 Hymowitz
 
 decision. Plaintiffs will not be penalized for their inability to identify a particular manufacturer; instead, the trier of fact will be required to determine which defendants were in the pregnancy market from 1947-1971 and their market share for each of these years and for each relevant dosage. This will establish the over-all risk produced in a given year and will act as a substitute for identification in each individual case
 
 (id.,
 
 at 512). Once the various percentages have been tabulated and the individual market shares determined, the causation-in-fact requirement imposed by
 
 Hymowitz
 
 will have been satisfied. Until then, however, identification remains an issue in the case, albeit in a modified form, and will only be resolved in the context of the market share trial.
 

 We similarly reject the argument that the market share trial is a preliminary issue, relating to the parties’ status, that does not trigger the plaintiffs’ right to a jury trial
 
 (see, e.g., Shippey v Berkey,
 
 6 AD2d 473, 475;
 
 Bux v Robinson,
 
 199 NYS2d 619, 621,
 
 revd on other grounds
 
 216 NYS2d 2,
 
 lv denied
 
 13 AD2d 912). Identification of the exact defendant who produced the product that injured the plaintiff is normally required in a products liability action, as noted above
 
 (Hymowitz v Lilly & Co., supra,
 
 at 504 [citing
 
 Morrissey v Conservative Gas Corp.,
 
 285 App Div 825,
 
 affd
 
 1 NY2d 741; Prosser and Keeton, Torts § 103, at 713 (5th ed)]). The plaintiffs no longer need to make this showing. They will, however, present evidence to establish the relevant market shares for each of the years that DES was marketed for pregnancy use. By all accounts, market share remains a hotly contested issue, with both sides planning to present a number of competing experts. The trier of fact will weigh the credibility of each expert and the validity of their models and statistics in its resolution of the market share issue. The market share percentages for each of the 24 years and the concomitant determination of each defendants’ ultimate culpability will dictate the ability of all plaintiffs to recover damages in their main actions. It is therefore difficult to conceive how the market share issue can be denominated as either preliminary or collateral.
 

 Thus, because we agree with the Appellate Division that market share is an issue in the plaintiffs’ cause of action for money damages and not a separate cause of action, plaintiffs
 
 *308
 
 are entitled to a jury trial by virtue of article I, § 2 of the New York Constitution and CPLR 4101. Although the Trial Judge had the power to sever and consolidate the market share issue for the sake of judicial economy, he did not have the added power to defeat the plaintiffs’ right to a jury trial.
 

 Because of our holding that adoption of the market share theory did not create a new equitable remedy or cause of action, but instead modified an existing common-law remedy, we need not consider defendants’ arguments that the market share theory is analogous to a long account, a bill of peace or equitable contribution. We would simply note that we do not accept the defendants’ argument that the sheer complexity of the market share proceeding converts it into an equitable cause of action as a matter of law. This conclusion would have enormous ramifications in the area of complex litigation and is completely unwarranted under the facts of this case. Market share is a discrete legal issue that is an integral part of the plaintiffs’ cause of action in tort for money damages. Since the issue is so clearly legal in nature, we decline to hold that the complexity of its resolution alone magically transforms it into an equitable matter that can defeat the plaintiffs’ constitutional right to a trial by jury.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur; Judge Bellacosa taking no part.
 

 Order affirmed, etc.