[923 NYS2d 267]

In the Matter of STATE OF NEW YORK, Respondent, v MYRON P., Appellant.

Third Department, May 5, 2011

APPEARANCES OF COUNSEL

*Cynthia Feathers*, Saratoga Springs, for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Frank Brady* of counsel), for respondent.

## OPINION OF THE COURT

McCARTHY, J.

Respondent pleaded guilty to attempted rape in the first degree and was sentenced to six years in prison followed by 2¹/₂ years of postrelease supervision. In 2006, when respondent was nearing the end of his prison term, he was involuntarily placed in a psychiatric facility's sex offender treatment program. He promptly requested a hearing challenging his involuntary hospitalization (*see* Mental Hygiene Law § 9.31). Before that hearing was held, petitioner commenced this proceeding seeking an order authorizing respondent's civil management pursuant to Mental Hygiene Law article 10. Supreme Court (O'Connor, J.) denied respondent's motion to stay the article 10 trial until after a Mental Hygiene Law article 9 hearing. In the article 10 trial, a jury determined that respondent suffered from a mental abnormality as defined by the statute, i.e., a condition or disorder that predisposes him to committing sex offenses and resulted in his "having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i]; *see* § 10.07 [d]). After a dispositional hearing, Supreme Court (McNamara, J.) found that respondent was a dangerous sex offender in need of confinement and committed him to a secure facility (*see* Mental Hygiene Law § 10.07 [f]). Respondent appeals.*

■ The jury's verdict was supported by legally sufficient evidence and was not against the weight of the evidence. Petitioner presented the testimony of a psychiatrist and two clinical psychologists, all of whom diagnosed respondent with antisocial personality disorder and paraphilia not otherwise specified. These three experts agreed that these disorders predisposed respondent to commit sex offenses and resulted in him having difficulty controlling himself from engaging in inappropriate or illegal sexual conduct. Petitioner sufficiently established its case

---

* We previously rejected former counsel's *Anders* brief, based upon the existence of issues of arguable merit, and assigned new counsel (72 AD3d 1362 [2010]).

through this testimony, along with documentary evidence consisting of hundreds of pages of respondent's records from mental health facilities, prison, parole, probation and his criminal cases.

Respondent offered only his own testimony in response. The jury could reasonably have accepted the testimony of the experts and disbelieved the portions of respondent's testimony that denied some of petitioner's proof; respondent acknowledged his criminal history and admitted to several other incidents of sexual impropriety. Respondent argues that there was not clear and convincing proof that he had difficulty in controlling his sexually offending behavior because, after committing numerous sexual assaults in his early life, he lived outside of prison for 12 years without any incidents. While such a time period without committing sex offenses is notable, the six rapes he committed after that period of inactivity demonstrate his continuing difficulty in controlling his illegal sexual behavior. Giving deference to the jury's credibility determinations, the evidence did not preponderate so greatly in respondent's favor that the jury's conclusion was unreachable under any fair interpretation of the evidence (*see Matter of State of New York v Richard VV.*, 74 AD3d 1402, 1403 [2010]; *Matter of State of New York v Shawn X.*, 69 AD3d 165, 169 [2009], *lv denied* 14 NY3d 702 [2010]). Accordingly, we will not disturb the verdict.

Respondent was not deprived of his constitutional right to a jury trial. Mental Hygiene Law article 10 entitles a respondent to a jury determination as to whether he or she is a detained sex offender who suffers from a mental abnormality (*see* Mental Hygiene Law § 10.07 [a], [d]). If the jury concludes that the respondent falls within the definitions of those terms, the court then determines whether the respondent requires confinement or outpatient treatment under strict and intensive supervision (*see* Mental Hygiene Law § 10.07 [f]). On the other hand, under Mental Hygiene Law article 9, while the court initially determines if a respondent is mentally ill and in need of involuntary care (*see* Mental Hygiene Law § 9.31), upon request, the respondent is entitled to a rehearing by a jury to determine the questions of mental illness and the need for retention (*see* Mental Hygiene Law § 9.35). Respondent here contends that he was deprived of his state constitutional right to a jury trial on the question of confinement, and denied equal protection of the law based on the difference between procedures in articles 9 and 10.

The NY Constitution provides that "[t]rial by jury in all cases, in which it has heretofore been guaranteed by constitutional

provision shall remain inviolate forever" (NY Const, art I, § 2). The Court of Appeals has interpreted this provision to mean that a jury trial is guaranteed in all cases where a jury was permitted in such actions prior to 1894, as well as new causes of action that may not have previously existed but "that are analogous to those traditionally tried by a jury" (*Matter of DES Mkt. Share Litig.*, 79 NY2d 299, 304-305 [1992]; *see Wynehamer v People*, 13 NY 378, 426 [1856]; *Strachman v Palestinian Auth.*, 73 AD3d 124, 127 [2010]). We must determine if the newly created cause of action under Mental Hygiene Law article 10 is analogous to an action traditionally tried by a jury.

■ The parties agree that civil management under Mental Hygiene Law article 10 is most closely analogous to prior law regarding the civil commitment of "lunatics," wherein a person alleged to be insane could demand a jury determination "upon the fact of [his or her] lunacy" (L 1842, ch 135, § 21; *see* L 1874, ch 446, Title First, art I, § 11). Under those early statutes, if a jury found the respondent sane, the judge was required to release him or her; otherwise the judge would confirm the order to immediately send the respondent to an asylum (*see id.*). That procedure continued until the enactment of Mental Hygiene Law former article 31 in 1972 (*see* L 1972, ch 251, § 2, Mental Hygiene Law § 31.35). While respondents had the right to a jury trial to determine "the fact of lunacy" prior to 1894 (*see* L 1874, ch 446, Title First, art I, § 11; L 1842, ch 135, § 21; *Sporza v German Sav. Bank*, 192 NY 8, 18 [1908]), it was not until 1972 that the law provided for a jury determination of both mental illness and the need for retention in a facility (*see* Mental Hygiene Law former § 31.35, as added by L 1972, ch 251, § 2; *see also* Mental Hygiene Law § 9.35). Because no analogous right to a jury trial previously existed regarding the determination of retention in a facility or need for continued treatment, as opposed to the initial fact of lunacy (or mental illness or mental abnormality), NY Constitution, article I, § 2 does not guarantee the right to a jury trial for the dispositional phase of a proceeding under Mental Hygiene Law article 10 (*see Matter of DES Mkt. Share Litig.*, 79 NY2d at 304-305; *Strachman v Palestinian Auth.*, 73 AD3d at 127). Respondent was provided a jury trial on the initial question of mental abnormality, thereby fulfilling his constitutional right to a jury trial for the only portion of the proceeding to which that right applied.

■ Respondent's equal protection rights (*see* US Const 14th Amend; NY Const, art I, § 11) were not violated despite the dif-

ferences between the right to jury determinations under Mental Hygiene Law articles 9 and 10. The essence of the constitutional guarantee of equal protection is "that all persons similarly situated must be treated alike" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 630 [2004]; *see Hernandez v Robles*, 7 NY3d 338, 375 [2006]). While the government must refrain from " 'treating differently persons who are *in all relevant respects alike*' " (*Matter of DaimlerChrysler Co., LLC v Billet*, 51 AD3d 1284, 1288 [2008], quoting *Nordlinger v Hahn*, 505 US 1, 10 [1992]), respondents under article 10 are not, in all relevant respects, like respondents under article 9.

Contrary to respondent's assertion, Mental Hygiene Law article 10 respondents are not merely a subset of mentally ill persons who could otherwise be confined under Mental Hygiene Law article 9. When enacting the article 10 procedures for the civil management of sex offenders, the Legislature made findings that differences exist between sex offenders with mental abnormalities and other individuals who are mentally ill, requiring separate treatment of those two groups of people. Specifically, the Legislature found "[t]hat sex offenders . . . are a different population from traditional mental health patients, who have different treatment needs and particular vulnerabilities. Accordingly, civil commitment of sex offenders should be implemented in ways that do not endanger, stigmatize, or divert needed treatment resources away from such traditional mental health patients" (Mental Hygiene Law § 10.01 [g]). As the Legislature has already found that patients who are subject to treatment under article 10 are a separate and distinct class from individuals otherwise obtaining mental health treatment, whether voluntarily or involuntarily, these separate populations are not similarly situated. Thus, the government may provide different procedures for the commitment or management of these different groups without violating their equal protection rights (*see Matter of State of New York v Pierce*, 79 AD3d 1779, 1782 [2010]; *see generally Matter of Walton v New York State Dept. of Correctional Servs.*, 13 NY3d 475, 493 [2009]; *Mental Hygiene Legal Servs. v Ford*, 92 NY2d 500, 510 [1998]).

Spain, J.P., Lahtinen, Kavanagh and Egan Jr., JJ., concur.

Ordered that the order is affirmed, without costs.