OPINION OF THE COURT
McCarthy, J.
In 1997, respondent pleaded guilty to one count of sodomy in the second degree and one count of criminal sale of marihuana in the second degree based on his giving marihuana to and engaging in sexual conduct with three young boys, ages 12, 13 and 15, over a three-month period. He was sentenced to 2V2 to 71/2 years in prison on each count, to be served consecutively. In 2008, after he completed a sex offender treatment program, he was released on parole supervision. Three months later, he was accused of making inappropriate comments and exposing his penis to a 15-year-old boy. As a result of that incident, respondent pleaded guilty to endangering the welfare of a child and was sentenced to one year of incarceration, and his parole was revoked.
In 2010, in anticipation of respondent’s impending release from prison, petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10 seeking a determination that respondent is a dangerous sex offender who requires civil confinement (see Mental Hygiene Law § 10.06 [a]). During jury selection, Supreme Court granted respondent’s request for a mistrial on the basis of juror misconduct. At a second jury trial, the jury found that respondent was a detained sex offender who suffers from a mental abnormality (see Mental Hygiene Law § 10.07 [a]). After the dispositional phase of trial, the court adjudicated respondent a dangerous sex offender requiring confinement (see Mental Hygiene Law § 10.07 [f]). Respondent appeals.
*21 Supreme Court did not err in denying respondent’s request to proceed pro se. Assuming, without deciding, that a respondent in a Mental Hygiene Law article 10 proceeding has the same right of self-representation as a criminal defendant (compare Matter of Kathleen K. [Steven K.], 17 NY3d 380, 386 [2011]), respondent’s request here was denied based on his failure to meet two prongs of the three-prong test.
“A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues” (People v McIntyre, 36 NY2d 10, 17 [1974] [italics omitted]).
Respondent made his request to proceed pro se only two business days before the second trial was scheduled to begin, which the court properly found untimely (see People v Neish, 232 AD2d 744, 746 [1996], lv denied 89 NY2d 927 [1996]). Additionally, although respondent had not disrupted the proceedings, in his colloquy regarding self-representation, he stated that he would try to “throw a monkey wrench in the proceeding,” frustrate what petitioner was attempting to do to him and defend himself in a way that would “surely be entertaining.” He later stated that if the court would not grant him an adjournment, he would not appear in court, even if the court granted his request to represent himself. The court properly denied his request based on these comments indicating that he would attempt to disrupt or prevent the orderly conduct of the trial (see People v Gilbo, 52 AD3d 952, 955 [2008], lv denied 11 NY3d 788 [2008]; People v Eady, 301 AD2d 965, 966 [2003], lv denied 100 NY2d 538 [2003]), along with the untimeliness of the request.
The jury verdict was not against the weight of the evidence. At the jury phase of this Mental Hygiene Law article 10 proceeding, petitioner bore the burden of establishing by clear and convincing evidence that respondent suffered from a “mental abnormality,” which is statutorily defined as “a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct” (Mental Hygiene Law § 10.03 [i]; see Mental Hygiene Law *22 § 10.07 [d]). We give great deference “to the jury’s credibility determinations and resolution of the conflicting testimony” (Matter of State of New York v Kenneth BB., 93 AD3d 900, 901-902 [2012]; see Matter of State of New York v Timothy EE., 97 AD3d 996, 998 [2012]).
At trial, petitioner’s two expert witnesses testified that they diagnosed respondent with paraphilia not otherwise specified and antisocial personality disorder, both of which are congenital or acquired conditions. Petitioner’s experts both testified that the diagnosed disorders affect respondent’s emotional, cognitive and volitional capacity so as to predispose him to committing sex offenses and result in him having extreme difficulty controlling such conduct. They supported their opinions with references to respondent’s contradictory reporting of his history and sex offenses, his preoccupation with sex, his admitted preference for young males as sexual partners, comments that he felt that such sexual interactions were not immoral even though he knew they were illegal, his blaming of the victims and others, his statements that the victims were willing participants, and his grooming behaviors used to lure his victims and pacify their families, including providing his minor victims with marihuana and alcohol. Those experts also relied on the large number of incidents of abuse — approximately 75 over three months with three victims — and his relapse only three months after being released on parole, that he was removed from sex offender treatment twice before completing his third course, and that his offense while on parole occurred within a year of him completing that treatment.
Respondent’s expert, Thomas Powell, agreed with the diagnosis of paraphilia, but did not find that respondent had antisocial personality disorder, instead diagnosing him with borderline personality disorder. Powell opined that these diagnosed conditions did not cause an inability to control his conduct and that respondent was able to manage himself to act in a lawful way. Respondent testified that he never forced himself on anyone and he was now aware that the crimes he committed are “unacceptable to society.” He also denied exposing himself to the 15-year-old victim in 2008, and testified that he thinks marihuana should be legalized. While testifying that he accepts responsibility for his crimes, he also felt that there was “some element of consent from the victims.” Considering the conflicting expert testimony, along with the voluminous records and respondent’s testimony, and according deference to the jury’s findings, “the *23 evidence did not preponderate so greatly in respondent’s favor that the jury’s conclusion was unreachable under any fair interpretation of the evidence” (Matter of State of New York v Myron P., 86 AD3d 26, 29 [2011], affd 20 NY3d 206 [2012]).
Respondent was not deprived of the effective assistance of counsel. Initially, we hold that while Mental Hygiene Law article 10 proceedings are civil rather than criminal, and that ineffective assistance of counsel may only be considered in civil litigation if extraordinary circumstances are present, the indefinite and involuntary nature of confinement that may result in this type of proceeding constitutes such an extraordinary circumstance (see Matter of State of New York v Company, 77 AD3d 92, 98 [2010], lv denied 15 NY3d 713 [2010]; see also Matter of State of New York v Carter, 100 AD3d 1438, 1439 [2012]; compare Matter of State of New York v John P., 20 NY3d 941, 943-944 [2012] [declining to decide whether the right to counsel in Mental Hygiene Law art 10 proceedings is coextensive with the right to counsel in criminal matters]).
Applying the criminal standard, we must determine whether “the evidence, the law, and the circumstances of [the] particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation” (People v Baldi, 54 NY2d 137, 147 [1981]). The only error raised by respondent is counsel’s choice to retain Powell as an expert. Powell, who had an impressive resume, was licensed as a psychologist in Vermont, had a pending application to become licensed in New York and was permitted to practice here on a limited basis due to a temporary exemption that was set to expire in April 2011 (see Education Law § 7605 [8]). He testified without objection at the jury trial in March 2011, but when he was asked to state his opinion during the dispositional phase of the trial in June 2011, petitioner objected because he was not licensed in New York and, therefore, did not qualify as a psychiatric examiner under the Mental Hygiene Law (see Mental Hygiene Law § 10.03 [h], [j], [k]). Supreme Court granted an adjournment to see if Powell’s licensing status could be resolved. Because Powell’s license application was still pending at the end of the adjournment, the court granted respondent an opportunity to retain a new expert. The court made this determination to protect respondent’s rights, acknowledging that Powell was able to practice pursuant to the temporary license when he was hired and at the time of the jury trial, and presumably would have been able to testify at a dispositional phase of trial, *24 but for the mistrial granted during the original jury phase, which could not have been expected by counsel and delayed the schedule of each phase. When respondent discovered that his newly selected expert could not interview him for more than two months, and counsel could not get that expert to provide a time line for the production of his report or his ability to testify, respondent chose to waive presentment of an expert and rest his case, knowing that the court would grant petitioner’s motion to strike Powell’s testimony. That meant that the court would rely on the testimony of petitioner’s expert, as well as any relevant evidence received during the jury phase. Counsel informed respondent of the consequences of such a waiver and the court inquired of respondent, finding that he knowingly and intelligently decided to rest his case.
Counsel cannot be faulted for not realizing, at the time he hired Powell, that Powell would not be licensed by the time of the delayed dispositional phase that eventually occurred approximately a year later. Counsel otherwise provided vigorous representation. Although counsel perhaps should have been more attentive to the situation concerning Powell’s licensing status, counsel adequately dealt with the situation once it arose.* When respondent was presented with options for dealing with that situation, he made a knowing choice to resolve the matter quickly rather than wait for an expert. Viewing the circumstances and evidence in their totality and as of the time of representation, we cannot say that respondent was denied the effective assistance of counsel (see People v Whitehead, 23 AD3d 695, 697 [2005], lv denied 6 NY3d 840 [2006]).
Peters, RJ., Stein and Spain, JJ., concur.
Ordered that the order is affirmed, without costs.

 While respondent requested new counsel after this licensing situation arose, his request was equivocal, as he stated that he simply wanted a second opinion. Supreme Court reasonably denied that request, as counsel was dealing with the situation, attempting to select a new expert with respondent’s input and addressing the available options.