COMMONWEALTH *vs.* ROBERT C. DRESSER.

No. 06-P-1777.

Franklin. December 6, 2007. - March 27, 2008.

Present: KANTROWITZ, DREBEN, & McHUGH, JJ.

*Sex Offender. Practice, Civil,* Sex offender, Trial jury-waived.

At the trial of the Commonwealth's petition for the defendant's commitment as a sexually dangerous person, a written jury waiver was not needed, where the defendant had notice and was aware that he was electing to proceed without a jury; however, the better practice would have been for the judge to engage the defendant in a colloquy and for the defendant to execute a written waiver. [457-459]

PETITION filed in the Superior Court Department on September 17, 2004.

The case was heard by *John A. Agostini,* J.

*Colleen C. Currie* for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. The defendant claims that the absence of a written jury waiver requires us to vacate the order committing him indefinitely to the Massachusetts Treatment Center as a sexually dangerous person. Because the record discloses that the defendant had notice and was aware that he was electing to proceed without a jury, and his other arguments are without merit, we decline to disturb the judgment. We agree with the defendant, however, that the better practice in such situations is for the judge to engage in a colloquy with the defendant, and for the defendant to execute a written jury waiver.

*Background.* On February 14, 1992, the defendant, Robert C. Dresser, pleaded guilty to two counts of forcible rape of a child, two counts of indecent assault and battery on a child, and one

count of rape of a child.[1] While incarcerated on those charges, he was indicted on additional offenses. In November of 1994, he pleaded guilty to five counts of rape of a child, and two counts of indecent assault and battery on a child.[2] In the months preceding his intended release date in 2004, the Commonwealth filed a petition for his commitment as a sexually dangerous person. A jury-waived trial was held in October of 2005, and an order of commitment issued.

On appeal, the defendant claims that (1) his right to a jury trial under G. L. c. 123A, § 14(*a*), was not affirmatively waived; (2) information concerning uncharged sexual assaults and a dismissed charge of abuse of a child under sixteen years of age were erroneously admitted; and (3) there was insufficient evidence to support the finding that the defendant was likely to engage in sexual offenses if not confined to a secure facility. We affirm.

*The trial.* On September 6, 2005, a status conference took place during which a trial date of October 31, 2005, was set. At the conference, the defendant's counsel, when asked about the length of the trial, responded, "Assuming we try it with a jury, I'd suggest three days, perhaps three and a half." Apparently, a decision was made to forgo a jury trial as evidenced by (1) trial notices, sent on September 22, 2005, indicating a date for a

[1]Dresser, who was born on March 30, 1951, pleaded guilty to these offenses, which occurred in 1990 and 1991, and was sentenced to serve five to fifteen years in State prison. The victims were two girls, ages thirteen and six. The thirteen year old reported that she had gone to a friend's house on March 3, 1991, to visit the friend's young daughter, whom Dresser was babysitting at the time. When she arrived, Dresser asked her to go to the bedroom, where he performed oral sex on her, digitally penetrated her, and unsuccessfully attempted to penetrate her with his penis. The six year old reported that Dresser penetrated her with his fingers while he was babysitting her and her brother on December 22, 1990.

[2]These offenses, which occurred between 1977 and 1991, involved three other victims. Two were his nieces. One reported being fondled, forced to perform oral sex, and penetrated by Dresser's fingers and penis, acts occurring over a period of more than ten years, from the time the victim was five until she was sixteen (approximately 1977 to 1988). The other niece reported that when she was thirteen, Dresser raped her while they were both staying over at the victim's grandmother's house. The same victim also reported that Dresser fondled her breasts during car rides around the same time. A third victim reported being sexually assaulted three times by Dresser in 1990 and 1991 when she was nine years old. Dresser was sentenced to additional time in State prison for these offenses.

"trial without jury;" and (2) a writ of habeas corpus, indicating the "jury-waived" trial date, sent on October 25 to the treatment center, where the defendant was being held. At the outset of the trial, defense counsel stated that the defendant was present and "prepared to be tried jury waived." There is no record of the trial judge conducting a colloquy with the defendant concerning his waiver of a jury trial, nor was a written waiver filed.[3] The trial commenced without objection by the defendant.

Four experts testified in the following order: Dr. Niklos Tomich and Dr. William Hazelett for the Commonwealth, and Dr. Leonard Bard and Dr. Joseph Plaud for the defendant. Not surprisingly, the expert witnesses for the Commonwealth testified that the defendant was a sexually dangerous person who was likely to reoffend if not committed. Conversely, the experts for the defendant testified that the defendant was not sexually dangerous, or, at most, presented a moderate to low risk of sexual dangerousness and likelihood of reoffending.

During a clinical interview with Dr. Tomich on February 8, 2005, the defendant indicated that there was a "good chance" that he would offend again if he started drinking and taking drugs, and that he sometimes experienced sexual arousal in response to young females on television. Further, the reports of Dr. Hazelett and Dr. Tomich, which were admitted into evidence, referenced numerous uncharged assaults.[4] Both of Dresser's experts, Dr. Bard and Dr. Plaud, testified on cross-examination regarding some of the uncharged conduct.[5] Doctor Bard stated in his report that when confronted with allegations of both charged and uncharged offenses, the defendant did not deny

---

[3]We were informed by the assistant district attorney at oral argument that the usual practice was to provide a colloquy in such situations.

[4]Doctor Hazelett referred in his report to the following incidents of uncharged conduct: (1) a dismissed charge of abuse of a child under sixteen, from 1970, that Dresser explained as a case of statutory rape involving a girlfriend; (2) a letter, written by the twin sister of one of Dresser's victims, alleging Dresser forced her to perform oral sex on him and performed oral sex on her; (3) statements made by a girl for whom Dresser had babysat when she was four years old, alleging Dresser had touched her vagina with his hand and penis. Doctor Tomich referenced the same uncharged conduct and dismissed allegations in his report. Although these reports were admitted in evidence, neither Dr. Hazelett nor Dr. Tomich testified as to these incidents of uncharged conduct.

[5]On cross-examination, both Dr. Bard and Dr. Plaud referred to the 1970 dismissed charge of abuse of a child under sixteen. Doctor Plaud also testified

having engaged in the acts.[6] The prosecutor also referred to the uncharged assaults in her closing argument.[7] No objection to any of this evidence was lodged.

*Jury waiver.* The defendant claims that a colloquy and a written waiver are required in order to waive a jury. In support, he cites G. L. c. 123A, § 14(*a*), added by St. 1999, c. 74, § 8, which provides, in pertinent part, that a trial "shall be by jury unless affirmatively waived by the person named in the petition."

Sexually dangerous person trials are civil, not criminal, in nature, and the right to a jury trial in such a case is statutorily created, rather than required by either Federal or State Constitution.[8] See *Sheridan, petitioner,* 422 Mass. 776, 777-780 (1996). "Typically, where a right is conferred by statute and is not a fundamental constitutional right, we apply traditional indicia of waiver of rights. . . . Traditional indicia include waiver by inaction, by express agreement, by untimely motion, and by failure to object." *Commonwealth* v. *Davidson,* 27 Mass. App. Ct. 846, 848 (1989) (citations and quotation omitted).

Here, counsel, presumably after conferring with his client,

---

that his review of Dresser's records indicated that Dresser admitted to having committed more sexual assaults than those charged.

[6] Doctor Bard stated in his report that "[i]t is unclear whether all of the above allegations led to formal charges and/or convictions. . . . When asked about the above offenses, Mr. Dresser reported difficulty recalling each of the charges and victims, but stated that 'I know I did wrong' and did not dispute the victims' accounts of the offenses."

[7] In her closing, the prosecutor stated, "The convictions in this case are for five separate victims, there are additional victims who report that they were sexually assaulted by Mr. Dresser. Mr. Dresser himself acknowledges that there were additional victims in this case, your Honor."

[8] In criminal cases, a defendant is entitled to a trial by jury unless waived in writing following a colloquy. See G. L. c. 263, § 6; Mass.R.Crim.P. 19(a), 378 Mass. 888 (1979); *Ciummei* v. *Commonwealth,* 378 Mass. 504, 509 (1979). In civil cases, "Article 15 [of the Massachusetts Declaration of Rights] generally provides an opportunity for a jury trial in a civil action between two or more persons 'except in cases in which it has heretofore been otherways used and practiced.' Article 15 thus preserves the common law right to trial by jury established when the Constitution of the Commonwealth was adopted in 1780." *Frizado* v. *Frizado,* 420 Mass. 592, 595 (1995). In *Frizado,* the Supreme Judicial Court held that art. 15 does not require a trial by jury for "complaints under G. L. c. 209A concerning protection from abuse . . . [as t]he wrongs or threats for which G. L. c. 209A provides a remedy do not appear to be ones that juries considered under the common law of the Commonwealth." *Id.* at 594-595.

indicated on two separate occasions that the trial would be jury-waived.[9] Under the circumstances, no more was needed.[10]

Having so ruled, however, we recognize that the better practice in such situations is to engage the defendant in a colloquy and to execute a written waiver. Certain rights ordinarily afforded criminal defendants have been extended to those civilly charged with being sexually dangerous persons, e.g., the right to counsel, the right to have counsel appointed if the defendant is indigent, the right to call expert witnesses (and, if indigent, the right to have the Commonwealth pay for them), the right to have process issue to secure the attendance of witnesses, the right to a unanimous jury verdict, the requirement that the case be proved beyond a reasonable doubt. See G. L. c. 123A, § 14(*b*) & (*d*).

"While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000) (citation omitted). See *Commonwealth* v. *Ferreira*, 67 Mass. App. Ct. 109, 115 (2006). "In determining what process is due . . . this court 'must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs.' " *Sheridan, petitioner*, 422 Mass. at 778, quoting from *Commonwealth* v. *Barboza*, 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982). The minimal burden upon the Commonwealth in ensuring a colloquy and written waiver is outweighed by the interests of the defendant, whose liberty is at risk. The better practice in commitment proceedings under c. 123A, thus, is to require, as in criminal cases, a colloquy and written waiver. See *Commonwealth* v. *Burgess*, 450 Mass. 366, 374 (2008) ("[E]ven though the [sexually dangerous person]

---

[9]Counsel indicated, after the case was called for trial, "Mr. Dresser is in court and is prepared to be tried jury waived." Counsel also responded affirmatively to the judge's question, "And it's going to be jury waived?"

[10]In noncapital criminal cases, the Supreme Judicial Court has held that an unintentional violation of the procedural rule of jury waiver does not warrant a reversal unless the defendant can show that a substantial risk of a miscarriage of justice resulted. See *Commonwealth* v. *Collado*, 426 Mass. 675, 678 (1998). It was, therefore, the defendant's burden to show that a substantial risk of a miscarriage of justice occurred as a result of the trial court judge's failure to deliver a colloquy. The defendant failed to carry his burden.

hearing is civil in nature, the Legislature has provided that it proceed much the same as a criminal trial, and that it include many rights to which a criminal defendant is constitutionally entitled" [citation omitted]).[11]

*Judgment affirmed.*

---

[11]We find the remaining two arguments of the defendant to be without merit. First, the judge apparently did not even consider any uncharged conduct, as reflected by its omission in his findings. Second, there was sufficient evidence before the judge supporting his ultimate conclusion that the defendant was a pedophile, and likely to reoffend, given the number of victims, some of whom were unrelated to the defendant; the duration of the offending behavior and the threats used to control the victims; the lack of release plans; his severe substance abuse history; and his prior criminal history and antisocial behavior.