[981 NE2d 772, 958 NYS2d 71]

In the Matter of STATE OF NEW YORK, Respondent, v MYRON P., Appellant.

Argued October 18, 2012; decided November 20, 2012

POINTS OF COUNSEL

*Morrison & Foerster LLP,* New York City (*Charles L. Kerr, Mark David McPherson, Robert J. Baehr* and *Natalie R. Ram* of the District of Columbia bar, admitted pro hac vice, of counsel), for appellant. I. Myron P. properly preserved his constitutional claims below. (*Williams v City of New York,* 101 AD2d 835; *Barry v Manglass,* 55 NY2d 803; *Delaney v Philhern Realty Holding Corp.,* 280 NY 461; *Arrieta v Shams Waterproofing, Inc.,* 76 AD3d 495; *Baxstrom v Herold,* 383 US 107.) II. The State deprived Myron P. of equal protection by committing him to involuntary confinement pursuant to Mental Hygiene Law article 10. (*Hernandez v Robles,* 7 NY3d 338; *Baxstrom v Herold,* 383 US 107; *Humphrey v Cady,* 405 US 504; *United States ex rel. Schuster v Herold,* 410 F2d 1071; *People v Lally,* 19 NY2d 27; *Kansas v Hendricks,* 521 US 346; *Foucha v Louisiana,* 504 US 71; *Addington v Texas,* 441 US 418; *San Antonio Independent School Dist. v Rodriguez,* 411 US 1; *Johnson v California,* 543 US 499.) III. The State deprived Myron P. of his constitutional right to a jury trial by committing him to involuntary confinement pursuant to Mental Hygiene Law article 10. (*Matter of DES Mkt. Share Litig.,* 79 NY2d 299; *Colon v Lisk,* 153 NY 188; *Sporza v German Sav. Bank,* 192 NY 8; *Matter of Robert C. v Wack,* 167 Misc 2d 677; *State of N.Y. ex rel. Harkavy v Consilvio,* 7 NY3d 607; *Hughes v County of Monroe,* 147 NY 49; *Matter of Richard H. v Consilvio,* 6 AD3d 7; *Matter of Daniel R. v Wack,* 167 Misc 2d 74; *Matter of Maureen A. v Wack,* 153 Misc 2d 600.)

*Eric T. Schneiderman, Attorney General,* Albany (*Frank Brady, Barbara D. Underwood, Andrea Oser* and *Nancy A. Spiegel* of counsel), for respondent. I. The appeal should be dismissed because respondent's constitutional claims are not preserved for review by this Court. (*Matter of Schulz v State of New York,* 81 NY2d 336; *Elezaj v Carlin Constr. Co.,* 89 NY2d 992; *Feinberg v Saks & Co.,* 56 NY2d 206; *Matter of Shannon B.,* 70 NY2d 458; *State of N.Y. ex rel. Harkavy v Consilvio,* 7 NY3d 607; *Brown v City of New York,* 60 NY2d 893.) II. Respondent's jury claim fails because Mental Hygiene Law article 10 provided respondent with the jury right guaranteed by the State Constitution. (*Jones v United States,* 463 US 354; *Addington v Texas,* 441 US 418; *Kansas v Crane,* 534 US 407; *Kansas v Hendricks,* 521 US 346; *Matter of State of New York v Enrique T.,* 93 AD3d 158, 18 NY3d 976; *Matter of David B.,* 97 NY2d 267; *Matter of DES Mkt. Share Litig.,* 79 NY2d 299; *Motor Veh. Mfrs. Assn. of U.S. v State of New York,* 75 NY2d 175; *Colon v Lisk,* 153 NY 188;

*Sporza v German Sav. Bank*, 192 NY 8.) III. Respondent's equal protection claim fails because individuals considered under Mental Hygiene Law articles 9 and 10 are not similarly situated and can rationally be treated differently in any event. (*Matter of Walton v New York State Dept. of Correctional Servs.*, 13 NY3d 475; *Cleburne v Cleburne Living Center, Inc.*, 473 US 432; *Port Jefferson Health Care Facility v Wing*, 94 NY2d 284; *Nordlinger v Hahn*, 505 US 1; *Montgomery v Daniels*, 38 NY2d 41; *Hernandez v Robles*, 7 NY3d 338; *Affronti v Crosson*, 95 NY2d 713; *Kimel v Florida Bd. of Regents*, 528 US 62; *New York City Health & Hosps. Corp. v Brian H.*, 51 AD3d 412; *Matter of Scopes*, 59 AD2d 203.)

### OPINION OF THE COURT

Pigott, J.

In this proceeding pursuant to Mental Hygiene Law article 10, respondent, Myron P., contends that he was entitled to a jury trial on the determination of confinement. We hold that he was not and therefore affirm.

On February 13, 2001, respondent was convicted of attempted rape in the first degree and sentenced to six years' imprisonment with 30 months of parole supervision. Prior to his release, in October 2006, he was transferred from prison to the Sex Offender Treatment Program (SOTP), at Central New York Psychiatric Center (CNYPC) pursuant to Mental Hygiene Law article 9. In November 2006, he requested a hearing to contest his admission. Thereafter, in December 2006, CNYPC made an application to Supreme Court, pursuant to Mental Hygiene Law article 9, for an order authorizing CNYPC to retain respondent involuntarily for a period not to exceed six months.

In January 2008, while the article 9 proceeding was pending, the Attorney General, on the State's behalf, filed an article 10 petition seeking a determination that respondent is a detained sex offender requiring civil management and involuntary confinement. Thereafter, respondent applied for an order staying the commencement of the article 10 trial until the article 9 proceeding was completed, arguing that while he was a "detained sex offender" under Mental Hygiene Law § 10.03 (g) (5), the court was nevertheless required to determine whether he met the standard for "mental illness" under article 9 before proceeding under article 10. Respondent maintained that if the "article 9 admission is held to be invalid or [respondent] does not meet the criteria for involuntary admission to a psychiatric

hospital, then there is no jurisdiction to commence the article 10 proceeding" and "[the article 10] proceeding must be dismissed with prejudice."

Respondent's desire to proceed under article 9 was also rooted in his argument that, under Mental Hygiene Law § 9.35 he would be entitled to a jury trial on "the question of mental illness and the need for retention," but under article 10, the question whether his condition "requires inpatient confinement in a secure facility" is decided solely by a judge. He maintained that "it is a violation of [his] constitutional rights to be compelled to go forward to an article 10 jury trial until such time as the issues raised in my MHL article 9 demand for a hearing have been addressed."

Relying on our decision in *State of N.Y. ex rel. Harkavy v Consilvio* (8 NY3d 645 [2007]), Supreme Court denied a stay, holding that

> "the issues pertaining to respondent's involuntary commitment to the SOTP at CNYPC under MHL Article 9 must be resolved in an appropriate commitment hearing held in accordance with the procedures set forth in Article 10 of the MHL. As such, respondent's MHL Article 9 claims are rendered moot and/or academic as the basis for respondent's commitment is no longer MHL Article 9, but MHL Article 10."

Thereafter, a trial was held pursuant to article 10 after which a jury found that respondent was a detained sex offender who suffered from a mental abnormality within the meaning of that statute. At a later hearing, Supreme Court, acting without a jury, concluded that clear and convincing evidence in the record established that respondent was a dangerous sex offender requiring confinement, and committed him to a secure facility.

Respondent appealed, arguing that the jury's verdict that he suffered from a mental abnormality was not supported by legally sufficient evidence; and that Mental Hygiene Law article 10 improperly deprived him of his right to a jury trial under the United States and New York State Constitutions on the issue of whether he should be involuntarily committed to a secure facility.

The Appellate Division unanimously affirmed (86 AD3d 26 [3d Dept 2011]), finding that legally sufficient evidence supported the jury's verdict. It further held that respondent was

not deprived of his constitutional right to a jury trial on the issue of confinement. It first concluded that because respondent "was provided [with] a jury trial on the initial question of mental abnormality, . . . his constitutional right to a jury trial" was satisfied (*id.* at 30). The court similarly held that respondent's equal protection rights were not violated, concluding that respondents under article 10 were not similarly situated to those under article 9 (*id.*). Respondent appealed as of right to this Court pursuant to CPLR 5601 (b) (1).

As an initial matter, we conclude that respondent adequately preserved his constitutional arguments in his motion to stay the article 10 proceeding. We nevertheless disagree with respondent on the merits.

Respondent first contends that the State violated his rights under the Equal Protection Clause of the Federal and State Constitutions because the State affords other similarly situated individuals the right to have a jury determine the issue of confinement, while article 10 does not. Specifically, he points to the fact that individuals subject to article 9 are provided the right to have a jury determine both whether the individual is mentally ill and whether the individual should be confined to receive involuntary care (*see* Mental Hygiene Law § 9.35).

The Equal Protection Clause in the New York State Constitution states that "No person shall be denied the equal protection of the laws of this state or any subdivision thereof" (NY Const, art I, § 11). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." In essence, the constitutional guarantee of equal protection is "that all persons similarly situated must be treated alike" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 630 [2004]). Thus, a

> "violation of equal protection arises where *first*, a person (compared with others similarly situated) is selectively treated and *second*, such treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (*id.* at 631).

It is clear that article 10 respondents are not similarly situated to those subject to proceedings under article 9. Indeed, in *State of N.Y. ex rel. Harkavy v Consilvio* (7 NY3d 607 [2006]) we

held that the State could not apply article 9 of the Mental Hygiene Law to sex offenders who were serving a sentence when that process began. After that decision the legislature enacted article 10, acknowledging that "sex offenders in need of civil commitment are a different population from traditional mental health patients, who have different treatment needs and particular vulnerabilities" and that such civil commitment "should be implemented in ways that do not endanger, stigmatize, or divert needed treatment resources away from such traditional mental health patients" (Mental Hygiene Law § 10.01 [g]).

Article 10 respondents cannot be classified as a subset of article 9 respondents because they are a different category of individuals in terms of the nature of their mental disabilities, their treatment needs and the public safety concerns they present. The individuals targeted under article 9 and article 10 proceedings are distinct.

In any event, because article 9 and article 10 involve two different categories of persons, with different treatment needs, it was appropriate for the legislature to treat them differently. The State correctly notes that the confinement decision under article 9 is quite different than that of article 10. Article 10 has two dispositional choices—either confinement or strict and intensive supervision and treatment (*see* Mental Hygiene Law § 10.07 [f])—while under article 9 confinement is the only available disposition. The determination as to the level of danger an individual poses to public safety is inextricably tied to the nature of the treatment and supervision options available. This difference supports the legislature's decision that the confinement determination under article 10 is better suited for the court rather than a jury.

■ Nor was respondent denied his state constitutional right to a trial by jury. Article I, § 2 of the New York Constitution provides that "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever." "The express language of this provision exhorts us to consider as an historical matter the types of actions to which the right to a jury trial has traditionally attached" (*Matter of DES Mkt. Share Litig.*, 79 NY2d 299, 304 [1992]). We have held that a jury trial is guaranteed: "(1) in all those cases to which it would have traditionally been afforded under the common law before 1777, and (2) in all cases to which the Legislature by statute extended a right to a jury trial between 1777 and 1894" (*id.*). "In addition, it has been held that

the right to a jury trial is not strictly limited to those instances in which it was actually used in 1894, but also extends to new cases that are analogous to those traditionally tried by a jury" (*id.* at 305).

Respondent asserts that historical civil commitment statutes on their face provided a right to a jury trial regarding questions of a person's mental illness and need for confinement. Thus, he argues that under the law as it existed at the time of the enactment of the New York State Constitution in 1894, a jury was required to decide both mental illness and the need for confinement, as both issues were considered as part of the same overarching inquiry. However in those historic civil commitment proceedings, once the jury made a finding of mental illness, the judge was statutorily mandated to confine the individual. This continued until 1972, when the legislature amended the civil commitment statute (article 9) to direct juries to consider both mental illness and the "need for retention" in a mental facility (*see* L 1972, ch 251, § 31.25). This change was wholly for the benefit of the individual subject to civil commitment.

The legislature chose not to assign to a jury the article 10 process which makes inquiry of whether the individual's dangerousness necessarily requires retention or the individual could safely be treated and/or supervised on an outpatient basis. When the legislature assigned that new, purely remedial determination to a judge rather than a jury, it did not violate respondent's state constitutional right to a jury trial.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur.

Order affirmed, without costs.