[15 NYS3d 366]

In the Matter of STATE OF NEW YORK, Respondent, v TED B., Appellant.

Second Department, July 29, 2015

**APPEARANCES OF COUNSEL**

*Craig S. Leeds*, New York City, for appellant.

*Eric T. Schneiderman, Attorney General*, New York City (*Michael S. Belohlavek* and *Won S. Shin* of counsel), for respondent.

**OPINION OF THE COURT**

CHAMBERS, J.

Under article 10 of the Mental Hygiene Law, Ted B., a detained sex offender, has both a statutory and state constitutional right to a jury trial to determine whether he suffers from a mental abnormality requiring civil management. For the reasons that follow, we conclude that an on-the-record colloquy is required to ensure that a detained sex offender validly waives that right to a jury trial on the issue of mental abnormality. This requirement was not satisfied here, where the waiver of Ted B.'s right to a jury trial was apparently based solely upon a letter he wrote to the Supreme Court, and where there is nothing in the record to show that the waiver was knowing and voluntary.

I.

On April 12, 1993, Ted B. was convicted of multiple offenses including five counts of rape in the first degree, five counts of sodomy (now criminal sexual act) in the first degree, and sexual abuse in the first degree. For these offenses, which stemmed from his sexual assault of two women in the City of Newburgh, Ted B. was sentenced to an aggregate indeterminate term of 13 to 26 years of imprisonment. On February 2, 2010, as Ted B.'s scheduled discharge date approached, the State of New York commenced this proceeding pursuant to Mental Hygiene Law article 10, known as the Sex Offender Management and Treatment Act, seeking to civilly manage Ted B.

Prior to trial, Ted B. sent a letter to the Supreme Court explaining at length why he did not want a jury trial. He cited two reasons for requesting a nonjury trial. First, he expressed his belief that, with a nonjury trial, he could have a polygraph test admitted into evidence that would otherwise be inadmissible in a jury trial. Second, Ted B. offered, "I want you to judge me for who I am today not the past which I strongly feel a jury would." Ted B. reiterated, at the end of his letter, "I want to prove the State was wrong about me . . . which is why I want a[ ] judge trial and a polygraph test to not only show that I never told [a forensic evaluator] those things but also that you are not setting a[ ] sex-offender free that['s] seeking revenge or another victim." The letter is stamped with the date and Justice DeRosa's name. There is no indication in the record that Ted B. discussed his letter with his attorney or with the court. Moreover, during the course of the proceedings, nei-

ther Ted B. nor his counsel confirmed in court or made a public record of his purported waiver of his right to a jury trial.

A nonjury trial was conducted, and the Supreme Court found that Ted B. suffers from a mental abnormality within the meaning of Mental Hygiene Law § 10.03. After a dispositional hearing, the Supreme Court determined that Ted B. is a dangerous sex offender requiring confinement, and directed that he be confined (*see* Mental Hygiene Law § 10.07 [f]).

## II.

Initially, we reject Ted B.'s contention that the State failed to sustain its burden of proving by clear and convincing evidence that he suffers from a mental abnormality and is a dangerous sex offender requiring confinement (*see id.*; *Matter of State of New York v Raul L.*, 120 AD3d 52, 58-60 [2014]; *Matter of State of New York v Clarence D.*, 82 AD3d 776, 777 [2011]).

Next, Ted B. contends that Mental Hygiene Law § 10.07 affords an absolute right to a jury trial in an article 10 proceeding, and that he did not knowingly and voluntarily waive that right since he did not execute a written waiver or acknowledge on the record that he was foregoing his right to a jury trial.

To address these contentions, we begin with an examination of the applicable statutes. It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the legislature (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]), and the best evidence of the legislature's intent is the text of the statute itself (*see Matter of Theroux v Reilly*, 1 NY3d 232, 239 [2003]). Where the statutory language is clear and unambiguous, a court should construe it so as to give effect to the plain meaning of the words used (*see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55, 60 [2013]).

Mental Hygiene Law § 10.07 (a) provides that upon a finding of probable cause to believe that a respondent is a sex offender requiring civil management, "the court *shall* conduct a jury trial to determine whether the respondent is a detained sex offender who suffers from a mental abnormality" (emphasis added). Mental Hygiene Law § 10.07 (b) further provides, with certain exceptions not relevant here, that article 41 of the Civil Practice Law and Rules shall apply to "the formation and conduct of [the] jury trial." Mental Hygiene Law § 10.07 (b) also states that "[t]he right to a trial by jury may be waived by the respondent" in an article 10 proceeding.

Relying on Mental Hygiene Law § 10.07 (b), which specifies that CPLR article 41 applies to the formation and conduct of jury trials, the State argues that the threshold question of whether the respondent in an article 10 proceeding is entitled to a jury trial is governed by CPLR 4102 (a). CPLR 4102 (a) provides that "[i]f no party shall demand a trial by jury as provided herein, the right to trial by jury shall be *deemed* waived by all parties" (emphasis added). The State contends that, since Ted B. never made a demand for a jury trial as required by CPLR 4102 (a), a trial by the court was properly held. Contrary to this contention, in the context of an article 10 proceeding, any reliance on CPLR 4102 (a) is inappropriate. The CPLR 4102 (a) requirement that a party make an affirmative demand for a jury trial is inconsistent with the plain language of Mental Hygiene Law § 10.07 (a), which expressly states that the court "shall" conduct a jury trial. The word "shall" is clear and absolute.[1] Critically, Mental Hygiene Law § 10.07 (b) ends with the sentence, "[t]he right to a trial by jury may be waived by the respondent." We believe that the legislature's inclusion of a "waiver" clause in Mental Hygiene Law § 10.07 (b) was deliberate and contemplated that, in order to waive the right to a jury trial in an article 10 proceeding, a respondent must take some affirmative action. There is a significant distinction between an automatic right to a jury trial in an article 10 proceeding, which may be waived, and a right to a jury trial that is conditioned upon a demand pursuant to CPLR 4102 (a). Accordingly, we find that Ted B.'s failure to demand a jury trial does not constitute an implicit waiver of his right to a jury trial. Thus, we now turn to a pivotal question on this appeal: what is required to validly waive the right to a jury trial in an article 10 proceeding?

■ The plain reading of Mental Hygiene Law § 10.07 (b) evinces that a respondent in an article 10 proceeding may waive a jury trial, but does not explicitly state the requirements for a valid waiver. By comparison, statutes which govern the right to a jury trial in other types of proceedings contain specific requirements. For example, in a criminal prosecution, where a defendant's constitutional right to a jury trial is

---

1. "Shall" has been referred to as a mandatory directive (*see Wager v Pelham Union Free Sch. Dist.*, 108 AD3d 84, 88 [2013]), mandatory language (*see Matter of Home Depot U.S.A., Inc. v Town Bd. of the Town of Southeast*, 70 AD3d 824, 827 [2010]) and a mandatory verb form that leaves no doubt as to its meaning (*see Thomas v Alleyne*, 302 AD2d 36, 40 [2002]).

guaranteed by the Sixth Amendment to the United States Constitution, CPL 320.10 (2) requires that a written waiver must be "signed by the defendant in person in open court in the presence of the court, and with the approval of the court." In contrast, in both a proceeding under Mental Hygiene Law § 9.35 for the civil retention of a patient, and in a proceeding for the appointment of a guardian for an alleged incapacitated person, the failure to make a demand is deemed to be a waiver of the right to a jury trial (*see* Mental Hygiene Law § 81.11 [f]).

Notably, Mental Hygiene Law § 10.07 (b) does not fill this statutory void. It simply directs that the provisions of article 41 of the CPLR shall apply to the "formation and conduct of [the] jury trial," with certain exceptions where the Criminal Procedure Law is to be applied. The "formation and conduct of [the] jury trial" relates to matters such as the number of jurors necessary to form a jury, challenges to the panel, examination of prospective jurors, and the number of peremptory challenges, but does not prescribe the procedure for waiving the right to a jury trial (Mental Hygiene Law § 10.07 [b]).

In determining the requirements for a valid waiver of the right to a jury trial in an article 10 proceeding, we must consider the nature of the proceeding and the extent to which constitutional protections must be afforded. The Court of Appeals has made clear that proceedings pursuant to the Sex Offender Management and Treatment Act "are civil proceedings" (*Matter of State of New York v Floyd Y.*, 22 NY3d 95, 104 [2013]; *see* Mental Hygiene Law § 10.01 [b] [in its legislative findings, the legislature stated that "confinement of the most dangerous offenders will need to be extended by civil process in order to provide them such treatment and to protect the public"]). Indeed, the Court of Appeals has held that the constitutional protections afforded to criminal defendants do not apply to sex offenders facing civil confinement (*see Matter of State of New York v Floyd Y.*, 22 NY3d at 103). Thus, a respondent in an article 10 proceeding does not have a federal constitutional right to a jury trial under the Sixth Amendment (*see Matter of State of New York v Floyd Y.*, 22 NY3d at 103).

However, a respondent's statutory right to a jury trial in an article 10 proceeding is protected by article I, § 2 of the New York State Constitution, which provides that "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever." The Court of Appeals has held that a jury trial is guaranteed in all

cases to which the legislature by statute extended such a right at the time the New York State Constitution was enacted in 1894 (*see Matter of State of New York v Myron P.*, 20 NY3d 206, 212 [2012]). "In addition, it has been held that the right to a jury trial is not strictly limited to those instances in which it was actually used in 1894, but also extends to new cases that are analogous to those traditionally tried by a jury" (*Matter of DES Mkt. Share Litig.*, 79 NY2d 299, 305 [1992]; *see Matter of State of New York v Myron P.*, 20 NY3d at 212-213). Since civil commitment statutes in New York have historically provided a right to a jury trial regarding questions of a person's mental illness (*see Matter of State of New York v Myron P.*, 20 NY3d at 213), a respondent in an article 10 proceeding has a state constitutional right to a jury trial to determine the issue of mental abnormality.

In view of the fact that article 10 proceedings are civil in nature, "the Due Process Clauses of the Fifth and Fourteenth Amendments, as expressed by the *Mathews v Eldridge* (424 US 319, 335 [1976]) balancing test, govern the scope of procedural due process" (*Matter of State of New York v Floyd Y.*, 22 NY3d at 103). Accordingly, a respondent's waiver of the right to a jury must comport with the procedural due process requirements under both the United States and New York Constitutions. Thus, there must be effective procedures in place so as to guard against the erroneous deprivation of life, liberty, or property (*see Matter of State of New York v Floyd Y.*, 22 NY3d at 104; *People v David W.*, 95 NY2d 130, 136 [2000]; *Matter of State of New York v Raul L.*, 120 AD3d 52, 64-65 [2014]).

Due process is a flexible concept but, at its core, is concerned with "fundamental fairness" (*Lassiter v Department of Social Servs. of Durham Cty.*, 452 US 18, 24 [1981]; *see Morrissey v Brewer*, 408 US 471, 481 [1972]). In order to discover what fundamental fairness requires in a particular situation, both relevant precedents and the interests at stake must be considered (*see Lassiter v Department of Social Servs. of Durham Cty.*, 452 US at 24-25). The specific dictates of due process require consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail (*see Mathews v Eldridge*, 424 US 319, 335 [1976]; *Matter of State of New York v Floyd Y.*, 22 NY3d at 105; *People v David W.*, 95 NY2d at 136-137). We apply these three factors to the current case.

The Court of Appeals has noted that "[t]he Federal and State Constitutions protect individual liberty, and it is one of our most cherished and protected rights" (*Matter of State of New York v Floyd Y.*, 22 NY3d at 105). Here, the potential for indefinite confinement threatens a liberty interest of the highest order (*id.*). Thus, the first factor weighs in favor of requiring additional procedural protection to ensure that the waiver of a jury trial in an article 10 proceeding is knowing and voluntary (*see id.*; *see Addington v Texas*, 441 US 418, 425 [1979]).

Under the second factor, which considers the risk of erroneous deprivation in the absence of additional or substitute procedures, we note that the purpose of a jury trial is " 'to prevent oppression by the Government' " (*Ballew v Georgia*, 435 US 223, 229 [1978], quoting *Williams v Florida*, 399 US 78, 100 [1970]). This purpose is attained by the participation of the community (*see Williams v Florida*, 399 US at 100; *Duncan v Louisiana*, 391 US 145, 155-156 [1968]). Between the state and the individual lies the jury, with its commonsense judgment and its shared responsibility for the determination it must make (*see Williams v Florida*, 399 US at 100). Thus, the risk of erroneous deprivation of the right to a jury trial is a substantial one, and this factor also weighs in favor of affording additional procedural protection to a respondent's waiver of a jury trial in an article 10 proceeding.

In considering the third factor, we recognize that the State has a significant interest in the prompt and reliable adjudication of whether a detained sex offender suffers from a mental abnormality for purposes of treating him while protecting the community (*see* Mental Hygiene Law § 10.01). However, requiring additional procedural protection to ensure that a waiver of the right to a jury trial in an article 10 proceeding comports with due process would not be an unduly burdensome requirement. The essence of a waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it (*see Johnson v Zerbst*, 304 US 458, 464-465 [1938]; *People v Harris*, 61 NY2d 9, 17 [1983]; *City of New York v State of New York*, 40 NY2d 659, 669 [1976]; *Matter of Georgetown Unsold Shares, LLC v Ledet*, 130 AD3d 99 [2d Dept 2015]). "[K]nowledge and intent are essential ele-

ments" (*People v Cox*, 71 AD2d 798, 798 [1979]). The waiver "must be clear, unmistakable and without ambiguity" (*Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685, 686 [1982], *affd* 61 NY2d 1001 [1984]).

Since the issue of procedural due process raised in this appeal is a matter of first impression in our Court, we look to other courts for guidance. For example, in *Matter of State of New York v Robert C.* (113 AD3d 937 [2014]), the Third Department reviewed the validity of a waiver of a jury trial in an article 10 proceeding. The respondent, during a pretrial conference in which he participated by video, waived his right to a jury trial on the issue of whether he suffered from a mental abnormality and consented to a finding that he had a mental abnormality. The respondent thereafter moved to withdraw his waiver of the right to a jury trial and his consent to a finding of mental abnormality. The Supreme Court denied the motion. In affirming, the Third Department stated that "[a] waiver of the right to a jury trial, in a proceeding that may affect the party's liberty interests, will be upheld if the court made an inquiry to establish that the waiving party understood the implications of such waiver and the waiver was knowingly, intelligently and voluntarily made" (*id.* at 939). In concluding that this standard had been satisfied, the Third Department noted that there was an on-the-record discussion between counsel, the respondent, and the Supreme Court, which demonstrated that the waiver and consent were knowing and intelligent.

In *Commonwealth v Dresser* (71 Mass App Ct 454, 883 NE2d 306 [2008]), the Commonwealth of Massachusetts sought to indefinitely commit the defendant to the Massachusetts Treatment Center as a sexually dangerous person. At the time, Massachusetts law required that a trial "shall be by jury unless affirmatively waived by the person named in the petition" (Mass Gen Laws ch 123A, § 14 [a], as added by 1999 Mass Legis Serv ch 74, § 8). Trial notices were sent out shortly before the trial, indicating a date for a "trial without jury" (*Commonwealth v Dresser*, 71 Mass App Ct at 456, 883 NE2d at 308). In addition, a writ of habeas corpus, indicating the "jury-waived" trial date, was faxed to the treatment center where the defendant was being held (*id.*). At the outset of the trial, defense counsel stated that the defendant was present and "prepared to be tried jury waived" (*id.*). Also, counsel responded affirmatively to the court's question, "And it's going to be jury waived?" (*Com-*

*monwealth v Dresser*, 71 Mass App Ct at 458 n 9, 883 NE2d at 310 n 9). However, no colloquy between the defendant and the trial court ever occurred, and a written waiver was never filed. After the nonjury trial, the court directed that the defendant be committed. On appeal, the Appeals Court of Massachusetts noted that the right to a jury trial in this type of proceeding was statutorily based and not a fundamental federal or state constitutional right. Hence, under Massachusetts law, traditional indicia of waiver, such as waiver by inaction, by express agreement, by untimely motion, and by failure to object, had to be employed. The court stated that counsel, presumably after conferring with the defendant, indicated on two separate occasions that the trial would be jury-waived. No more was needed, the court held. However, in accord with due process protections, the court stated that, going forward, "the better practice in such situations is to engage the defendant in a colloquy and to execute a written waiver" because of the potential deprivation of liberty that these defendants face (*Commonwealth v Dresser*, 71 Mass App Ct at 458, 883 NE2d at 310; *see Commonwealth v Brown*, 83 Mass App Ct 1110, 982 NE2d 72 [2013]).

With these general principles in mind, we hold that in order to accomplish a valid waiver of the right to a jury trial in an article 10 proceeding under Mental Hygiene Law § 10.07 (b), and in accordance with due process, there must be an on-the-record colloquy, in order to ensure that the respondent understands the nature of the right, and that the respondent's decision is knowing and voluntary after having had sufficient opportunity to consult with counsel (*see Johnson v Zerbst*, 304 US at 465 ["it would be fitting and appropriate" for the determination as to whether there has been a valid waiver "to appear upon the record"]). This requirement is a minimal burden on the State that does not impede its interest in promptly and reliably adjudicating whether a detained sex offender suffers from a mental abnormality. Thus, the State's interest is outweighed by the need to ensure that a respondent's decision to forgo his state constitutional and statutory right to a jury trial is the product of an informed and intelligent judgment and, thereby, "protect the important liberty interests at stake in article 10 proceedings" (*Matter of State of New York v Floyd Y.*, 22 NY3d at 106; *see Matter of State of New York v Myron P.*, 20 NY3d at 213; *People v Duchin*, 12 NY2d 351, 353 [1963]).

In this case, there was no on-the-record colloquy regarding Ted B.'s decision to waive his right to a jury trial. Therefore,

we cannot conclude that he knowingly and voluntarily waived that right. In his letter to the Supreme Court, Ted B. articulated a legitimate reason for wanting to forego a jury trial, arising from his concern that a jury would judge him upon his past offenses.[2] However, the letter provides no assurance that he came to that conclusion after having consulted with his attorney (*see People v Calvi*, 89 NY2d 868, 871 [1996] ["Something . . . must be placed on the record, and nothing was done here, including no manifest review of the waiver itself"]). Indeed, the letter itself reflects that Ted B. misapprehended key legal concepts. More specifically, Ted B. expressed the erroneous belief that a polygraph test could be admissible in a nonjury trial to show that he did not make certain statements to a forensic evaluator and was not seeking revenge against another victim, and that he had the burden of showing that "the State was wrong about [him]" when it is the State's obligation to establish, by clear and convincing evidence, that a detained sex offender suffers from a mental abnormality (*see* Mental Hygiene Law §§ 10.07 [d]; 10.03 [e]). Under these circumstances, the letter cannot be viewed as an adequate substitute for an on-the-record colloquy.

We note, however, that a written waiver such as is mandated by CPL 320.10 in criminal proceedings is not required in order to satisfy the requirements of Mental Hygiene Law article 10 or due process (*see Matter of State of New York v Floyd Y.*, 22 NY3d at 105). The additional burden of requiring a written waiver in the context of a civil proceeding militates against such a requirement (*see id.*). All that a trial court must do is explain to a respondent the nature of the right to a jury trial and confirm that he or she has decided to waive that right after consulting with his or her attorney.

Ted B.'s remaining contention is academic in light of our determination.

SKELOS, J.P., DUFFY and LASALLE, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, the finding of mental abnormality is set aside, and the matter is remitted to the Supreme Court, Orange

---

2. In the bill jacket to the Sex Offender Management and Treatment Act, one not-for-profit organization expressed "the wisdom of allowing sex offenders to waive a jury trial during their commitment hearings, having learned from other states that juries typically vote to civilly commit, whereas judges tend more to form opinions based on the merits of each individual case" (Letter from New York State Alliance of Sex Offender Service Providers, Bill Jacket, L 2007, ch 7 at 51).

County, for a new trial on the issue of mental abnormality and, if necessary, a new dispositional hearing.